THE COREA FIRM, P.L.L.C.
Thomas M. Corea, Esq.
Texas State Bar No. 24037906
Admitted *Pro Hac Vice*
Grant B. Stock, Esq.
Texas State Bar No. 24033240
Admitted *Pro Hac Vice*
1201 Elm Street, 41st Floor
Dallas, Texas 75270
Telephone:  (214) 953-3900
Facsimile:  (214) 953-3901
E-mail: tcorea@corealaw.com
E-mail: gstock@corealaw.com

OTSTOTT & JAMISON, P.C.
George A. Otstott Sr., Esq.
Texas Bar No. 15342000
*Pro Hac Vice* Admission Pending
Two Energy Square
4849 Greenville Avenue, Suite 1620
Dallas, Texas 75206
Telephone:  (214) 522-9999
Facsimile:(214) 828-4388
E-mail: gotstott@otstottandjamison.com

BRYDON, HUGO & PARKER
George Avery Otstott Jr., Esq.
California Bar No. 184671
135 Main Street, 20th Floor
San Francisco, California 94105
Telephone:  (415) 808-0300
Facsimile: (415) 808-0333

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| STACY  LEE  ARELLANO, *Individually and On Behalf Of All Those Similarly Situated,*<br><br>*Plaintiffs,*<br>*v.*<br><br>T-MOBILE USA, INC. and HTC AMERICA, INC.,<br><br>*Defendants.* | **Case No. 3:10-cv-05663-WHA**<br><br>**PLAINTIFFS OPPOSITION TO DEFENDANTS' JOINT MOTION TO COMPEL ARBITRATION AND STAY CLAIMS**<br><br><u>CLASS ACTION</u><br><br>Date: April 7, 2011<br>Time: 2:00 p.m.<br>Room: 9, 19th Floor<br>Judge: Honorable William H. Alsup |

# TABLE OF CONTENTS

**PAGE**

I.   INTRODUCTION                                                                                          1

II.  ISSUES TO BE DECIDED                                                                            2

III. STATEMENT OF FACTS                                                                             2

IV.  ARGUMENTS & AUTHORITIES                                                                 5

    1.   DEFENDANTS HAVE FAILED TO DEMONSTRATE THE EXISTENCE OF A          5
        VALID AGREEMENT TO ARBITRATE

    2.   THE ARBITRATION CLAUSE IN THE TERMS & CONDITIONS IS                        7
        UNCONSCIONABLE

        a.   THE ARBITRATION AGREEMENT IS PROCEDURALLY                             7
             UNCONSCIONABLE

        b.   THE ARBITRATION AGREEMENT IS SUBSTANTIVELY                            9
             UNCONSCIONABLE

          i.   THE CLASS ACTION WAIVER IS UNCONSCIONABLE AND THUS THE      10
              ENTIRE ARBITRATION CLAUSE IS VOID
          ii.  THE CLASS ACTION WAIVER IS AGAINST CALIFORNIA PUBLIC           14
              POLICY AND IS VOID
          iii. THE ARBITRATION AGREEMENT IS SO ONE-SIDED AS TO BE              15
              SUBSTANTIVELY UNCONSCIONABLE
          iv.  DEFENDANTS' CITATION TO CASES IN WHICH AN OPT-OUT WAS        16
              ENFORCED ARE DISTINGUISHABLE – THE OPT-OUT IN THE
              ARBITRATION CLAUSE DOES NOT NEGATE UNCONSCIONABILITY
              UNDER THE FACTS OF THIS LAWSUIT

    3.   HTC IS NOT A PARTY TO THE ARBITRATION AGREEMENT AND              20
        SHOULD NOT BE DISMISSED IN FAVOR OF ARBITRATION.

    4.   THE FAA DOES NOT PREEMPT A DETERMINATION OF ENFORCEABILITY     21

5.   IN THE ALTERNATIVE, PLAINTIFF'S CLAIMS FOR INJUNCTIVE RELIEF ARE   23
       NOT SUBJECT TO THE ARBITRATION CLAUSE

V.   CONCLUSION                                                         23

# TABLE OF AUTHORITIES

**Cases**

*America Online, Inc. v. Superior Court*, 90 Cal.App.4th 1, 108 Cal.Rptr.2d 699 (2001).............. 14

*Armendariz v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669 (Cal. 2000).................................... 7

*Badie v. Bank of America*, 67 Cal. App. 4th 779, 79 Cal. Rptr. 2d 273 (Cal. 1998) ........................ 6

*Brazil v. Dell, Inc.*, No. C-07-01700, 2007 WL 2255296 (N.D. Cal. Aug. 3, 2007) ................ 14, 20

*Britton v. Co-Op Banking Group*, 4 F.3d 742 (9th Cir. 1993) ..................................................... 20, 21

*Bruni v. Didion*, 160 Cal.App.4th 1272, 73 Cal.Rptr.3d 395 (Cal.App.2008)............................... 5

*Chalk v. T-Mobile USA, Inc.*, 560 F.3d 1087 (9th Cir. 2009) ........................................... 7, 10, 11, 13

*Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198 (9th Cir. 2002) ........................................... 17, 18

*Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104 (9th Cir. 2002) .............................................. 17, 18

*City of Hope, et al. v. Cave, LLP*, 102 Cal.App.4th 1356, 126 Cal.Rptr.2d 283 (2002) ................. 21

*Dale v. Comcast Corp.*, 498 F.3d 1216 (11th Cir. 2007) ..................................................... 22

*Discover Bank v. Superior Court*, 113 P.3d 1100 (Cal. 2005)................................................. 7, 12, 22

*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995) .......................................... 5

*Fitz v. NCR Corporation*, 118 Cal.App.4th 702, 13 Cal.Rptr.3d 88 (Cal. Ct. App. 2004) ........... 15

*Garbacz v. A.T. Kearny, Inc.*, No. C 05-05404 JSW, 2006 WL 870690 (N.D. Cal. Apr. 4, 2006).... 5

*Gentry v. Superior Court*, 42 Cal.4th 443, 165 P.3d 556, 64 Cal.Rptr.3d 773 (Cal. 2008)........... 16

*Grafton Partners, LP v. Superior Court*, 36 Cal.4th 944, 116 P.3d 479, 32 Cal.Rptr.3d 5 (Cal. 2005) ............................................................................................................................... 14

*Guadagno v. E\*Trade Bank*, 592 F. Supp.2d 1263 (C.D. Cal. 2008)................................................. 17

*Hicks v. Macy's Department Stores, Inc.*, No. C 06-02345 CRB, 2006 WL 2595941 (N.D. Cal. Sept. 11, 2006) ............................................................................................................ 18, 19

*Hoffman v. Citibank*, 546 F.3d 1078 (9th Cir. 2008) ............................................................ 19, 20

*Homa v. Am. Express Co.*, 558 F.3d 225 (3rd Cir. 2009) ............................................................ 22

*Kaltwasser v. Cingular Wireless, LLC*, 543 F.Supp.2d 1124 (N. D. Cal. 2008) ............................ 7, 8

*Kilgore v. Key Bank, National Association*, No. C 08-2958 TEH, 2009 WL 1975271 (N.D. Cal. July 8, 2009) ........................................................................................................................ 23

*Laster v. AT&T Mobility, LLC*, 584 F.3d 849 (9th Cir. 2009) ........................................ 12, 13, 21, 22

*Little v. Auto Stiegler, Inc.*, 63 P.3d 979 (Cal. 2003) ................................................................ 15

*Lowden v. T-Mobile USA*, 512 F.3d 1213 (9th Cir. 2008) ............................................................ 22

*Magnallez v. Hilltop Lending Corp.*, 505 F. Supp.2d 594 (N.D. Cal. 2007) .................................... 5, 6

*McCarthy v. Providential Corp.*, 1994 WL 387852, at *2 (N.D. Cal. July 19, 1994) ......................... 5

*Mercuro v. Superior Court*, 96 Cal.App. 4th 167, 116 Cal.Rptr.2d 671 (Cal. Ct. App. 2002) ..... 15

*Molecular Analytical Systems v. Ciphergen Biosystems, Inc.*, 186 Cal.App. 4th 696, 111 Cal.Rptr.3d 876 (2010) ................................................................................................ 20

*Oestreicher v. Alienware Corp.*, 502 F. Supp.2d 1061 (N.D. Cal. 2007) ................................. 19, 20

*Pokorny v. Quixtar, Inc.*, 601 F.3d 987 (9th Cir. 2010) ...................................................... 7, 8, 9, 15

*Shroyer v. New Cingular Wireless Servs., Inc.*, 498 F.3d 976 (9th Cir. 2007) ................................. 7

*Skirchak v. Dynamics Research Corp.*, 508 F.3d 49 (1st Cir. 2007) ............................................. 22

*Vasquez-Lopez v. Beneficial Oregon Inc.*, 152 P.3d 940 (Or. 2007) ............................................ 11

**Statutes**

Consumer Legal Remedies Act, Civ. Code .................................................................................. 14

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. Introduction

T-Mobile customers, like Stacie Arellano, enter into and sign service agreements with T-Mobile with the expectation that they will obtain that company's telecommunications services.  Referenced, but not included in those signed agreements, are T-Mobile's "Terms and Conditions."   Within those Terms & Conditions exists an arbitration clause and class action waiver.  It is based upon that arbitration clause that T-Mobile and HTC move to compel arbitration.  However, the arbitration clause is both procedurally and substantively unconscionable.  Specifically:

- The Terms & Conditions are not signed by the consumer nor attached to the service agreement.  While it would be easy for T-Mobile to provide the Terms & Conditions for signature, T-Mobile does not do so.  Instead, the arbitration clause is buried in the separate Terms & Conditions document elsewhere.

- T-Mobile waives class actions with respect to "**ANY DISPUTE RESOLUTION PROCEEDINGS, WHETHER IN ARBITRATION OR COURT**."[1]

- T-Mobile's Terms & Conditions provide that T-Mobile can unilaterally make any change to the arbitration clause they desire.

- The Terms & Conditions have an opt-out clause but the clause can unilaterally be removed, and only allows an opt-out for 30 days.

- While consumers are bound by the arbitration provision as to all actions, T-Mobile may bring in court all "amounts due" claims it has – basically the vast majority of its claims against a consumer.

T-Mobile claims its arbitration clause and opt-out provision are a god-send to consumers and cure any claims of unconscionability.  To the contrary, if T-Mobile wished to assist its consumers it would not strive to ensure that their rights to bring a

---

[1] Terms & Conditions (emphasis in original).

class action were abrogated.  Nor would it segregate its Terms and Conditions from the service agreements or give consumers only 30 days to "opt-out."  Consumers like Ms. Arellano never "chose" arbitration as T-Mobile alleges.

In addition, where consumers have not opted-out within 30 days, the plain fact remains that the arbitration clause and class action waivers still serve to deny the consumers their basic rights.  T-Mobile argues that its arbitration agreement "allows full remedies at minimal costs."  Combined with its class-action waiver however, T-Mobile knows that this is just not the case.  This is because, under T-Mobile's plan, if accepted, T-Mobile can make misrepresentations to hundreds of thousands of consumers while secure in the knowledge that the only legal device available to stop that widespread abuse – the class action – has been suffocated.

## II.  ISSUES TO BE DECIDED

Whether the Defendants met their burden in demonstrating that a valid agreement to arbitrate exists.

Whether the arbitration clause in T-Mobile's Terms & Conditions (hereinafter, the "Arbitration Clause"), and its class action waiver, are unconscionable both substantively and procedurally.

Whether HTC is a party to the arbitration agreement and may compel arbitration of the claims made against it.

Whether the FAA preempts enforceability and whether Plaintiffs' injunctive relief claims are subject to arbitration.

## III.  STATEMENT OF FACTS

On February 22, 2011 Defendants filed their Joint Motion to Compel Arbitration and Stay Claims.[2]  In that Motion, the Defendants present the following facts as to Stacie Arellano:

---

[2] Defendants' Notice of Motion and Joint Motion to Compel Arbitration and Stay Claims; Memorandum of Points and Authorities in Support ("Motion to Compel"), Dkt. 27.

- Stacie Arellano signed up for T-Mobile service and purchased two "MyTouch 4G" phones at a store in East Los Angeles, California on November 20, 2010.[3]

- Customers who sign up for service in T-Mobile stores are required to sign written service agreements.[4]

- The service agreements include acknowledgment of receipt of the Terms & Conditions.[5]

- Stacie Arellano signed: a written agreement for her purchase of the phones, installment payments for the cost of the phones, and a two year service contract with T-Mobile.[6]   A copy of those documents is attached as Exhibit A to the Motion to Compel and hereto as Exhibit "1".

Importantly, T-Mobile does not provide a copy of the Terms & Conditions signed by Stacie Arellano.   In fact, as implied by the Defendants in their motion to compel, customers are not required to sign the Terms & Conditions.   Rather, those Terms & Conditions are simply referenced in the service agreement they do sign and are inserted in a "pamphlet" in boxes containing the phones, which is not noted in the service agreement.   The Terms & Conditions are also available through various avenues should a consumer seek them.[7]   Of course, the Defendants never allege that Stacie Arellano viewed the Terms & Conditions or signed the Terms & Conditions.

The Terms & Conditions (attached as Exhibit "B" to the Motion to Compel, and Exhibit "2" hereto) consist of 7 pages of single-spaced, arial size 8 font.  The Arbitration Clause, at paragraph 2, provides as follows:[8]

---

[3] *Id*. at 5.

[4] *Id*.

[5] *Id*. at 5,6.

[6] *Id*. at 6.

[7] Motion to Compel, at 6.

[8] Plaintiff has used the same font herein.

**Dispute Resolution and Arbitration. WE EACH AGREE THAT, EXCEPT AS PROVIDED BELOW (AND EXCEPT AS TO PUERTO RICO CUSTOMERS), ANY AND ALL CLAIMS OR DISPUTES IN ANY WAY RELATED TO OR CONCERNING THE AGREEMENT, OUR SERVICES, DEVICES OR PRODUCTS, INCLUDING ANY BILLING DISPUTES, WILL BE RESOLVED BY BINDING ARBITRATION, RATHER THAN IN COURT.** This includes any claims against other parties relating to Services or Devices provided or billed to you (such as our suppliers, Dealers or third party vendors) whenever you also assert claims against us in the same proceeding. We each also agree that the Agreement affects interstate commerce so that the Federal Arbitration Act and federal arbitration law apply (despite the choice of law provision in Section 26). THERE IS NO JUDGE OR JURY IN ARBITRATION, AND COURT REVIEW OF AN ARBITRATION AWARD IS LIMITED. THE ARBITRATOR MUST FOLLOW THIS AGREEMENT AND CAN AWARD THE SAME DAMAGES AND RELIEF AS A COURT (INCLUDING ATTORNEYS' FEES).

For all disputes (except for Puerto Rico customers), whether pursued in court or arbitration, you must first give us an opportunity to resolve your claim by sending a written description of your claim to the address in Section 15 below. We each agree to negotiate with each other in good faith about your claim. If we do not resolve the claim within 60 days after we receive this claim description, you may pursue your claim in arbitration. You may pursue your claim in a court only under the circumstances described below. We each agree that if you fail to timely pay amounts due, we may assign your account for collection, and the collection agency may pursue in court claims limited strictly to the collection of the past due amounts and any interest or cost of collection permitted by law or the Agreement.

Notwithstanding the above,**YOU MAY CHOOSE TO PURSUE YOUR CLAIM IN COURT AND NOT BY ARBITRATION** if: (a) your claim qualifies, you may initiate proceedings in small claims court; or (b) **YOU OPT OUT OF THESE ARBITRATION PROCEDURES WITHIN 30 DAYS FROM THE DATE YOU ACTIVATED SERVICE FOR THE RELEVANT LINE (the "Opt Out Deadline")**. You must opt out by the Opt Out Deadline for each line of Service. You may opt out of these arbitration procedures by calling 1-866-323-4405 or completing the opt-out form located at www.T-Mobiledisputeresolution.com. Any opt-out received after the Opt Out Deadline will not be valid and you must pursue your claim in arbitration or small claims court.

**If the arbitration provision applies or you choose arbitration to resolve your disputes, then either you or we may start arbitration proceedings.** You must send a letter requesting arbitration and describing your claim to our registered agent (see Sec. 15) to begin arbitration. The American Arbitration Association (AAA) will arbitrate all disputes. For claims of less than $75,000, the AAA's Supplementary Procedures for Consumer-Related Disputes will apply; for claims over $75,000, the AAA's Commercial Arbitration Rules will apply. The AAA rules are available at www.adr.org or by calling 1-800-778-7879. Upon filing of the arbitration demand, we will pay all filing, administration and arbitrator fees for claims that total less than $75,000. For claims that total more than $75,000, the payment of filing, administration and arbitrator fees will be governed by the AAA Commercial Arbitration Rules. An arbitrator may award on an individual basis any relief that would be available in a court, including injunctive or declaratory relief and attorneys' fees. In addition, for claims under $75,000 as to which you provided notice and negotiated in good faith as required above before initiating arbitration, if the arbitrator finds that you are the prevailing party in the arbitration, you will be entitled to a recovery of reasonable attorneys' fees and costs. Except for claims determined to be frivolous, T-Mobile agrees not to seek an award of attorneys' fees in arbitration even if an award is otherwise available under applicable law.  Puerto Rico customers:  Refer to Section 14 for details of the Puerto Rico Telecommunications Dispute Procedure.

CLASS ACTION WAIVER. **WE EACH AGREE THAT ANY DISPUTE RESOLUTION PROCEEDINGS, WHETHER IN ARBITRATION OR COURT, WILL BE CONDUCTED ONLY ON AN INDIVIDUAL BASIS AND NOT IN A CLASS OR REPRESENTATIVE ACTION OR AS A MEMBER IN A CLASS, CONSOLIDATED OR REPRESENTATIVE ACTION.** If a court or arbitrator determines in an action between you and us that this waiver is unenforceable, the arbitration agreement will be void as to you. **If you chose to pursue your claim in court by opting out of the arbitration provision as specified above, this Class Action Waiver provision will not apply to you. Neither you, nor any other customer, can be a class representative, class member, or otherwise participate in a class, consolidated, or representative proceeding without having complied with the opt out requirements above.**

 JURY TRIAL WAIVER. If a claim proceeds in court rather than through arbitration, **WE EACH WAIVE ANY RIGHT TO A JURY TRIAL.**[9]

In addition, the Terms & Conditions provide, at paragraph 5, a clause entitled "Our Rights to Make Changes."[10]  That clause states that T-Mobile "can change any terms in the agreement at any time."[11]  Assuming T-Mobile deems such a change material, they agree to

---

[9] *See* Terms & Conditions, at 1-2, attached hereto as Exhibit "2."

[10] *Id.* at 2.

[11] *Id.*

notify the consumer whose only option, at that juncture, is cancellation – provided the consumer adheres to certain notification deadlines and provisions.[12]   Of course the consumer is not free to change any terms.

## IV. ARGUMENTS & AUTHORITIES

### 1. **Defendants Have Failed to Demonstrate the Existence of a Valid Agreement to Arbitrate.**

When deciding whether a claim is subject to an arbitration clause, the Court must first determine if there is a valid arbitration agreement.[13]   It is the burden of the movants, here T-Mobile and HTC, to prove by a preponderance of the evidence that such an agreement exists.[14]  If the existence of an agreement to arbitrate is in dispute, a court must resolve the issue concerning all of the applicable facts.[15]  When considering a motion to compel arbitration that is opposed on the grounds that no binding agreement to arbitrate exists, the district court should give the opposing party the benefit of all reasonable doubts and inferences that may arise.[16]

In *Maganallez v. Hilltop Lending Corp.*,[17] the Court examined a signed addendum agreement in which the parties agreed to submit to arbitration but the terms of that arbitration were unclear.[18]  *Maganallez* noted that arbitration waives the important and constitutional right to a jury trial.[19]   Accordingly, to be enforced, an arbitration

---

[12] *See id.*

[13] *Bruni v. Didion*, 160 Cal.App.4th 1272, 1282, 73 Cal.Rptr.3d 395 (Cal.App.2008). Whether an agreement to arbitrate was formed between the parties is determined under California contract law principles. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

[14] *Bruni*, 160 Cal.App.4th 1272, 1282; *See also Magnallez v. Hilltop Lending Corp.*, 505 F. Supp.2d 594, 599 (N.D. Cal. 2007).

[15] *Bruni*, 160 Cal. App. 4th at 1282.

[16] *McCarthy v. Providential Corp.*, No. C 94-0627 FMS, 1994 WL 387852, at *2 (N.D. Cal. July 19, 1994); *Garbacz v. A.T. Kearny, Inc.*, No. C05-05404, 2006 WL 870690, at *2 (N.D. Cal. Apr. 4, 2006).

[17] 505 F. Supp.2d 594, 602-03 (N.D. Cal. 2007).

[18] *Id*. at 601-01.

[19] *Id*. at 602.

agreement must be clear and unambiguous. As held in *Maganallez*, "where there is doubt surrounding whether a party has waived his or her right to a jury trial, the doubt should be resolved in favor of preserving that right."[20]  Because the signed agreement in that case was unclear, the United States District Court for the Northern District of California denied the motion to compel arbitration.[21]

Here, the Defendants attached to their Motion to Compel a signed service agreement and an unsigned Terms & Conditions.  The service contract is <u>unclear</u> as to the terms of the arbitration agreement between the parties.  It does not detail the terms of any arbitration and simply references the Terms & Conditions (which Defendants admit are not attached to the agreement).  The arbitration agreement in the service agreement is unclear and cannot be enforced.

As to the Terms & Conditions – the Defendants have not shown that Stacie Arellano even saw the Terms & Conditions and Defendants all but admit that neither Ms. Arellano nor any other consumer had to sign those Terms and Conditions.  At best the Terms & Conditions are provided in a pamphlet somewhere in the box with the cellular phone.[22]  However, the service agreement never references that placement.

The Defendants have the burden of showing a sufficient meeting of the minds in order for the Court to hold that Ms. Arellano waived her important constitutionally protected rights to a jury trial.[23]  The Defendants have not met that burden.

**2.   <u>The Arbitration Clause in the Terms & Conditions is Unconscionable.</u>**

Aside from the fact that the Terms & Conditions are neither signed nor attached to the service agreement, the Arbitration Clause is also unconscionable.

---

[20] *Id*. (citing *Badie v. Bank of America*, 67 Cal. App. 4th 779, 790, 79 Cal. Rptr. 2d 273 (Cal. 1998)).

[21] *Id*. at 603.

[22] The Defendants do not attach a copy of that pamphlet to their Motion to Compel.

[23] *Maganallez,* 505 F. Supp.2d at 603.

---

Unconscionability is a generally applicable contract defense that may render an agreement to arbitrate unenforceable.[24]   It is governed by state law – in this case California law.[25]  As such, the Court must "approximate state law as closely as possible" and is bound by the pronouncements of California's highest court.[26]

California law dictates that an arbitration agreement is unenforceable if it is procedurally and substantively unconscionable.[27]  In California, an evaluation as to unconscionability is performed on a sliding scale.[28]  "The more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa."[29]

### a.  The Arbitration Agreement is Procedurally Unconscionable.

Procedural unconscionability is determined by analyzing factors such as surprise and oppression due to unequal bargaining power.[30] This includes a determination as to "whether the contract was one drafted by the stronger party and whether the weaker party had an opportunity to negotiate."[31] Here, corporate defendant T-Mobile drafted the Terms and Conditions.  The terms were not open for negotiation by Arellano or any consumer.

T-Mobile's arbitration agreement is similar to that in *Kaltwasser v. Cingular Wireless, LLC.*[32] In *Kaltwasser*, defendant Cingular Wireless, LLC, the party with superior bargaining power, drafted a wireless service agreement and presented it to the consumer in a take-it-or-leave-it format.  There was no opportunity for negotiation and

---

[24] *Shroyer v. New Cingular Wireless Servs., Inc.*, 498 F.3d 976, 981 (9th Cir. 2007).

[25] *Chalk v. T-Mobile USA, Inc.*, 560 F.3d 1087, 1092 (9th Cir. 2009).

[26] *Id*.

[27] *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 996 (9th Cir. 2010).

[28] *Armendariz v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669, 690 (Cal. 2000).

[29] *Pokorny*, 601 F.3d at 996  (citation and quotation omitted).

[30] *Id.*; *Discover Bank v. Superior Court*, 113 P.3d 1100, 1108 (Cal. 2005).

[31] *Id.*

[32] 543 F.Supp.2d 1124, 1130 (N. D. Cal. 2008).

---

Cingular retained a unilateral right to amend its terms.[33]  As such, the United States District Court for the Northern District of California found the contract procedurally unconscionable.[34]   Here, in a similar take-it-or-leave-it agreement, T-Mobile also reserves the right to unilaterally terminate, change, alter or amend the arbitration clause.  Specifically, T-Mobile's Terms and Conditions state:

> Your Service is subject to our business policies, practices, and procedures, which we can change without notice. WE CAN CHANGE ANY TERMS IN THE AGREEMENT AT ANY TIME.[35]

Pursuant to its Terms & Conditions, T-Mobile retains a <u>unilateral</u> right to amend the terms of the Arbitration Clause.  In contrast, the consumer is bound by the contract and cannot freely change its terms.  Moreover, T-Mobile can unilaterally change the arbitration clause without notice, unless *T-Mobile* decides that a change is materially adverse.  Even then, the only remedy of the consumer is to, again, take it or leave it.  Thus, the consumer can only walk away from the contract - provided of course it jumps through various notification hoops.

In addition, surprise and oppression further exist because the consumer is not provided a copy of the Terms & Conditions (or Arbitration Clause) to sign.  Thus, T-Mobile's Terms & Conditions, the document containing the Arbitration Clause and opt-out, are not attached to the service agreement nor are they signed.

*Pokorny v. Quixtar, Inc.*[36] is instructive.  In *Pokorny*, the defendant, Quixtar, Inc., made a variety of products and services that it sold to consumers through a network of independent distributors.[37] The contract between Quixtar and its distributors included an agreement to arbitrate, which incorporated by reference the defendant's "Dispute

---

[33] *Id.* at 1130.

[34] *Id.*

[35] Defendants' Motion, Dkt. 27, Ex. B, p. 3 (emphasis original).

[36] 601 F.3d 987 (9th Cir. 2010).

[37] *Id.* at 990.

Resolution Procedures."[38]  In holding that Quixtar's arbitration clause was procedurally unconscionable, the Ninth Circuit found that the defendant failed to attach a copy of the Dispute Resolution Procedures, containing the full description of the arbitration agreement, to the agreement actually signed by the plaintiff.[39]  Accordingly, the Ninth Circuit held that the plaintiffs "were not even given a fair opportunity to review the full nature and extent" of the arbitration agreement.[40]  As stated in *Pokorny*, such failure to actually attach the arbitration agreement served to multiply the degree of procedural unconscionability.[41]

### b.  <u>The Arbitration Agreement is Substantively Unconscionable.</u>

The element most analyzed in a substantive unconscionability is its one-sidedness. "Mutuality is the paramount consideration when assessing substantive unconscionability."[42]

#### i.  **The class action waiver is unconscionable and thus the entire arbitration clause is void.**

Within the Arbitration Clause is a sub-section headed "**<u>CLASS ACTION WAIVER</u>**."[43]  Pursuant to that sub-section the contracts states:

> **WE EACH AGREE THAT ANY DISPUTE RESOLUTION PROCEEDINGS, WHETHER IN ARBITRATION OR COURT, WILL BE CONDUCTED ONLY ON AN INDIVIDUAL BASIS AND NOT IN A CLASS OR REPRESENTATIVE ACTION OR AS A MEMBER IN A CLASS, CONSOLIDATED OR REPRESENTATIVE ACTION.** If a court or arbitrator determines in an action between you and use that this waiver is unenforceable, the arbitration agreement will be void as to you.  **If you chose to pursue your claim in court by opting**

---

[38] *Id.*

[39] *Id.* at 997.

[40] *Id.*

[41] *Pokorny*, 601 F.3d at 997.

[42] *Pokorny*, 601 F.3d at 997 (internal citations and quotations omitted).

[43] Defendants' Motion, Dkt. 27, Ex. B, p. 3 (emphasis original).

out of the arbitration provision as specified above, this Class Action Waiver provision will not apply to you.[44]

The Class Action Waiver, drafted by T-Mobile, provides that "whether in arbitration or **court**" any dispute resolution will be conducted only on an individual basis and not as a class action.  Under California law, such class action waivers are unconscionable.

*Chalk v. T-Mobile USA, Inc.*[45] is instructive in this regard.  Although *Chalk* applied Oregon law, it also discussed California law and how a similar approach would be adopted there.[46]  In *Chalk*, the Ninth Circuit held that a class waiver clause in an agreement for the purchase of a wireless LAN PC card was substantively unconscionable.[47]  The Ninth Circuit determined that the class waiver clause was unconscionable for two reasons:

"First, such a waiver is inherently one-sided when contained in a consumer contract."[48]  This is because the effect of a class action waiver is entirely unilateral.[49]  As quoted in *Chalk*: "the majestic equality of the laws . . . forbids rich and poor alike to sleep under the bridges, to beg in the streets, and to steal their bread."[50]  Defendants may argue that they are equally subject to the class waiver. However, although the class waiver would prevent T-Mobile and consumers alike from bringing class actions, the

---

[44] *Id.*

[45] 560 F.3d 1087 (9 Cir. 2009).

[46] *See id.* at 1095, 1095 n.4, 1096.

[47] *Id.* at 1094-1098.  *Chalk* did not find as great a procedural unconscionability under the facts of that case.  However, unlike this case, in *Chalk* the Court noted that the actual arbitration clause was signed by the plaintiff.   *Id.* at 1094. ("Stewart's signature appears on the Service Agreement below the arbitration clause and class action waiver.") Moreover, the Court did not discuss whether a unilateral right to amend existed or whether the arbitration clause was attached to the signed agreement or merely referenced.

[48] *Id.* at 1095.

[49] *Id.*

[50] *Id.*

likelihood of T-Mobile seeking to do so against its customers is "as likely as the rich sleeping under bridges."[51]  Here, the class action waiver is very much one-sided.

Moreover, the language of the Terms & Conditions, drafted by T-Mobile and not the consumer, states, in all capital bold letters, that the class waiver applies to "**ANY DISPUTE RESOLUTION PROCEEDINGS, WHETHER IN ARBITRATION OR COURT**." Subsequent non-caps language in the Arbitration Clause regarding an opt-out is at best contradictory, and, thus, ambiguous, which contradiction should be construed in favor of the non-drafting party.  Moreover, the consumer is never provided the option of going forward with arbitration but retaining class action rights.

The second reason that the class action waiver is unconscionable is because "a consumer class action waiver frequently prevents individuals from vindicating their rights."[52]  This is because "the policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights."[53]   By preventing consumers from pursuing small but meritorious claims, a class action waiver gives T-Mobile a virtual license to commit, with impunity, millions of dollars worth of small-scale fraud.[54]  Here again, the actual damages by Stacie Arellano and the class are not high, including the cost of her phones and the monthly service fees expended since November 2010.   Given the small size of individual claims, enforcing the class action waiver would prevent T-Mobile's customers from vindicating their rights because the time and expense of prosecuting each such claim, through court or arbitration, would make it impracticable.

---

[51] *Chalk*, 560 F.3d at 1095.

[52] *Id.*

[53] *Id.* (*quoting Vasquez-Lopez v. Beneficial Oregon Inc.*, 152 P.3d 940, 950 (Or. 2007).

[54] *Id.*

California state and federal courts have routinely deemed class action waivers as void and against public policy.[55]   The policy in California is the same as that discussed in *Chalk*.   Specifically:

> Individual actions by [...] defrauded consumers [are] often impracticable because the amount of individual recovery would be insufficient to justify bringing a separate action; thus an unscrupulous seller retains the benefits of its wrongful conduct. A class action by consumers produces several salutary byproducts, including a therapeutic effect upon those sellers who indulge in fraudulent practices, aid to legitimate business enterprises by curtailing illegitimate competition, and avoidance to the judicial process of the burden of multiple litigation involving identical claims. The benefit to the parties and the courts would, in many circumstances, be substantial.[56]

Another reason for finding class action waivers unenforceable is that "[a]ll contracts *which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury* to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law."[57]

The California Supreme Court in *Discover Bank v. Superior Court* identified a three part test for determining the enforceability of class action waivers – "(1) is the agreement a contract of adhesion; (2) are disputes between the contracting parties likely to involve small amounts of damages; and (3) is it alleged that the party with superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money."[58] Thus, for example, in *Laster v.*

---

[55] *See Laster v. AT&T Mobility, LLC*, 584 F.3d 849 (9th Cir. 2009), cert. granted May 4, 2010, *AT&T Mobility LLC v. Concepcion*, 130 S.Ct. 3322 (2010).

[56] *Discover Bank v. Superior Court*, 36 Cal.4th 148, 157, 113 P.3d 1100, 1106, 30 CalRptr.3d 76, 82 (Cal. 2005) (citation and quotation omitted).

[57] *Id.* at 161 (emphasis original) (citation and quotation omitted).

[58] *Laster*, 548 F.3d at 854.

*AT&T Mobility, LLC*,[59] the Ninth Circuit held a class action waiver unenforceable because: the plaintiffs were not able to negotiate the terms of the contract; each plaintiff was claiming a small amount of damages; and the plaintiffs alleged that AT&T deliberately carried out a scheme to cheat a large number of consumers out of small sums of money.[60]

Here, as in *Laster*, Plaintiffs were unable to negotiate the contract terms. In addition, Plaintiffs are claiming a small amount of damages.  Finally, Plaintiffs have alleged that the Defendants are deliberately carrying out a scheme to deceive a large number of consumers and thereby result in there loss of relatively small sums of money.

Importantly, the arbitration agreement itself includes a provision whereby, "[i]f a court or arbitrator determines in an action between [the consumer] and [T-Mobile] that [the] waiver is unenforceable, the arbitration agreement will be void as to [the consumer]."[61]   Thus, if the class action waiver is unenforceable the entire arbitration agreement is unenforceable as well.[62]

The arbitration agreement is also unconscionable because of its attempted inclusion of jury trial waivers, which, as discussed below, are not enforceable in California.   A jury trial waiver in California is governed solely by Code of Civil Procedure section 631, which prescribes the only ways for waiving a jury trial. The Supreme Court of California denied a request to enforce a pre-suit contractual jury trial waiver because "[the California] Constitution treats the historical right to a jury resolution of disputes that have been brought to a judicial forum as fundamental, providing that in a civil cause, any waiver of the inviolate right to a jury determination

---

[59] 584 F.3d 849 (9th Cir. 2009).

[60] *Id.* at 854-55.

[61] *See* Defendants' Motion, Dkt. 27, Ex. B, p. 3.

[62] *See also* Chalk, 560 F.3d at 1098.

must occur by the consent of the parties to the case as provided by statute."[63] Section 631 is the only statute addressing a jury trial waiver, and it applies, and, therefore, a waiver can only occur "once litigation has commenced."[64] Both the "execution of the written consent [to waive a jury trial] and the filing of that consent must occur during the pendency of the civil action."[65] Plaintiff Arellano has not signed jury trial waivers since the commencement of this lawsuit. Therefore, the jury trial waiver is unenforceable.

### ii. The class action waiver is against California public policy and is void.

The class action waiver is also void because Plaintiffs bring claims under the Consumer Legal Remedies Act ("CLRA"). The CLRA specifically provides for class actions,[66] and expressly states that "[a]ny waiver by a consumer of the provisions of this title is contrary to public policy and shall be unenforceable."[67]

At least one California Court has determined that, where a forum selection and choice-of-law provision operate to essentially eliminate a consumer's ability to bring a class action based on the CLRA, such is unenforceable because of §1751.[68] Because Plaintiffs invoke the CLRA, any attempt to waive their ability for a class action is void.

Pursuant to the CLRA the entire arbitration agreement, including the class action waiver, is unenforceable. Here, and again, "[b]ecause the class waiver provision is part of the arbitration provision and central to the mechanism to resolving the dispute between the parties, it cannot be severed."[69] Accordingly, the arbitration provision is substantively unconscionable and the arbitration provision is therefore invalid and

---

[63] *Grafton Partners, LP v. Superior Court*, 36 Cal.4th 944, 951, 116 P.3d 479, 481, 32 Cal.Rptr.3d 5, 8 (Cal. 2005).

[64] *Id.* at 957.

[65] *Id.* at 958.

[66] Consumer Legal Remedies Act, Civ. Code § 1752.

[67] *Id.* at § 1751.

[68] *America Online, Inc. v. Superior Court*, 90 Cal.App.4th 1, 108 Cal.Rptr.2d 699 (2001).

[69] *Brazil v. Dell, Inc.*, No. C-07-01700, 2007 WL 2255296, * 8 (N.D. Cal. Aug. 3, 2007).

unenforceable. Because the arbitration provision and class action waiver are un-severable, the entire provision is unenforceable.

### iii. The arbitration agreement is so one-sided as to be substantively unconscionable.

"[M]utuality is the paramount consideration when assessing substantive unconscionability."[70]  In *Pokorny,* the Ninth Circuit held that the arbitration agreement between Quixtar and its distributors was substantively unconscionable because arbitration was not mutual.[71]   Quoting the California Supreme Court, *Pokorny* stated that, "[r]equiring one party to arbitrate its claims but not the other is a paradigmatic form of substantive unconscionability under California law."[72]  Such is the case here.

Where an agreement "compels arbitration of the claims more likely to be brought by the weaker party but exempts from arbitration the types of claims that are more likely to be brought by the stronger party,"[73] then it is unfairly one-sided.  For example, an arbitration agreement was held substantively unconscionable due to one-sidedness where an employer excluded claims such as equitable relief for unfair competition, unauthorized disclosure of trade secrets and violation of intellectual property rights from its arbitration agreement.[74] The agreement included other employment-related claims such as employment discrimination, which was the type of claim most likely to be brought by the employee.[75]

Here, the arbitration agreement is not mutual. T-Mobile expressly reserves its right to seek collection of past due payments in court through a collection agency.[76]  The

---

[70] *Pokorny*, 601 F.3d at 997 (internal citations and quotations omitted).

[71] *Id.* at 1000.

[72] *Id.* (quoting *Little v. Auto Stiegler, Inc.*, 63 P.3d 979, 984 (Cal. 2003)).

[73] *Fitz v. NCR Corporation*, 118 Cal.App.4th 702, 724, 13 Cal.Rptr.3d 88, 104 (Cal. Ct. App. 2004).

[74] *Id.*

[75] *Mercuro v. Superior Court*, 96 Cal.App. 4th 167, 172, 116 Cal.Rptr.2d 671, 671 (Cal. Ct. App. 2002).

[76] Defendants' Motion, Dkt. 27, Ex. B, p. 2.

arbitration clause states that T-Mobile "may assign your account for collection, and the collection agency may pursue in court claims limited strictly to the collection of the past due amounts and any interest or cost of collection by law or the Agreement."[77]  This is clearly the type of claim that T-Mobile would have against its customers.  In sharp contrast, while T-Mobile is free to sue its customers for collection on bills, customers are forced to resort to arbitration for every single claim they could possibly have against T-Mobile. This lack of mutuality evidences unconscionability.

Also lacking in mutuality, within the arbitration clause, is the requirement that any consumer must first give T-Mobile the opportunity to resolve any claims by sending a written description to T-Mobile and that, before arbitration, the consumer must send a letter to T-Mobile's registered agent requesting arbitration.

> ### iv. Defendants' citation to cases in which an opt-out was enforced are distinguishable – the opt-out in the Arbitration Clause does not negate unconscionability under the facts of this lawsuit. Alternatively, the record should be expanded as done in the *Hoffman* case.

The opt-out provision with the Arbitration Clause does not negate the unconscionability of that Clause under the facts and circumstances of this lawsuit.  As the California Supreme Court has decided, an opt-out provision does not automatically render an arbitration agreement enforceable.[78]  The California Supreme Court further held that an opt-out provision must represent an authentic informed choice for it to weigh in favor of enforceability.[79]

Plaintiffs in the instant case were not given an authentic informed choice. As discussed above, Plaintiff Arellano never even signed the Terms & Conditions.

---

[77] *Id.*

[78] *Gentry v. Superior Court*, 42 Cal.4th 443, 470, 165 P.3d 556, 573, 64 Cal.Rptr.3d 773, 793 (Cal. 2008).

[79] *Id.* at 470.

The cases cited by the Defendant in support of waiver based upon an opt-out are distinguishable.[80]   In *Guadagno v. E*Trade Bank*,[81] the plaintiff engaged in a click-wrap agreement immediately viewed by him and where the arbitration clause and class action waiver were clearly defined.[82]   Here, in contrast, the class waiver is ambiguous, seeming to apply to both actions before court and arbitration.   Moreover, in *Guadagno* the plaintiff was given 60 days to opt-out upon receipt of the actual arbitration clause and waiver.[83]   Here, Plaintiff was provided 30 days to opt-out from the date service was activated, rather than receipt of the actual arbitration clause and waiver.

Defendants cite to two cases in which employees of Circuit City were compelled to arbitrate based upon provisions in an Associate Resolution Program provided to them, which included an opt-out.[84]   However, both of those cases are readily distinguishable.   In enforcing arbitration, *Circuit City Stores, Inc. v. Najd*[85] specifically distinguished its facts from one in which parties were contracting at arm's-length (as here).[86]   The Court, both in *Najd* and *Circuit City Stores, Inc. v. Ahmed,*[87] laid out the specific and pain-staking measures taken by Circuit City to apprise their employees of the arbitration clause and the legal consequences thereof.[88]   This included the fact that

---

[80] Defendants also cite to *Cardenas v. Chase Manhattan Bank USA, N.A.*, 2006 W.L. 1454778 (Cal. Super. Ct. May 26, 2006).   Aside from being unpublished, it is specifically noted at the forefront of that case that it is "**Nonpublished/Noncitable**." *Id*. (emphasis in original). Key citing that case on Westlaw reveals it has no citing opinions and is also red-flagged as non-citable.

[81] 592 F. Supp.2d 1263 (C.D. Cal. 2008).

[82] *Id*. at 1270.

[83] *Id*. ("Here, Guadango had a meaningful opportunity to opt out of the Arbitration clause, which contained the class action waiver, by notifying E*Trade in writing within 60 days of receiving the Agreement.").

[84] *See Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104 (9th Cir. 2002); *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198 (9th Cir. 2002).

[85] 294 F.3d 1104 (9th Cir. 2002).

[86] *Id*. at 1109.

[87] 283 F.3d 1198 (9th Cir. 2002).

[88] *Najd*, 294 F.3d at 1109; *Ahmed*, 283 F.3d 1199.

---

employees acknowledged receipt in writing, which receipt "clearly set out in writing the significance of his failure to opt out and described the mechanism by which he could express disagreement."[89]   Arellano's service agreement referenced the opt-out but did not clearly set out its significance or mechanisms for disagreement.  In addition, in the *Circuit City* cases, the employer explicitly encouraged consultation with an attorney by the employee as to the effect of the opt-out and arbitration.[90]   Again, such was not done in this lawsuit.  Furthermore, Circuit City communicated in detail and in writing the effect of acceptance on the right to bring claims, including via written materials and a video presentation – all in the context of an employer-employee work environment.[91] Once again, such was not and could not have been the case here.

Similar to *Najd* and *Ahmed*, *Hicks v. Macy's Department Stores, Inc.*[92] also concerned an employee/employer relationship in which no arm's-length transaction existed.[93]   In *Hicks*, the employer held daily meetings with it employees about its arbitration dispute resolution solution, gave its employees documents explaining the arbitration and opt-out provisions, posted posters and diagrams at the workplace, and discussed arbitration in its handbook.[94]   The employer also mailed the employee the arbitration plan and included an opt-out form for mailing.[95]  When employees did not meet the opt-out deadline the employer notified them that they were party to the arbitration clause.[96] Thereafter, the employer mailed the packet again and allowed a second opportunity to opt-out via a postage-paid form for opt-out.[97]   Specifically following *Najd* and *Ahmed*,

---

[89] *Najd*, 294 F.3d at 1109.

[90] *Najd*, 294 F.3d at 1109; *Ahmed*, 283 F.3d 1199.

[91] *Najd*, 294 F.3d at 1109; *Ahmed*, 283 F.3d 1199.

[92] No. C 06-02345 CRB, 2006 WL 2595941 (N.D. Cal. Sept. 11, 2006).

[93] *Id*. at *1.

[94] *Id*. at *1, 3.

[95] *Id*. at *1.

[96] *Id*.

[97] *Id*.

*Hicks* held that the employee was indisputably given a meaningful opportunity to opt-out.[98]  Again, such was simply not the case here.

In addition, none of those cases cited by the Defendants concerned or discussed issues of unconscionability relevant here, including: T-Mobile's ability to unilaterally amend, delete or change the arbitration clause and opt-out provision; T-Mobile's unilateral ability to bring the bulk of its actions in court regardless of any opt-out (here claims for past payments); Plaintiffs' claims under the Consumer Legal Remedies Act; and the jury trial waiver in the Terms & Conditions.

In *Hoffman v. Citibank*,[99] the Ninth Circuit addressed whether the presence of an opt-out automatically precluded a finding of unconscionability.  *Hoffman* held that it did not.[100]  In that case, Citibank had mailed its clients a specific letter entitled "Notice of Change in Terms Regarding Binding Arbitration to Your Citibank Card Agreement."[101] Included in that notice was a class waiver, as well as a provision for "non-acceptance." The non-acceptance stated that a party could opt-out of arbitration and class waiver if notice was provided within a certain period.[102]  Applying California law, *Hoffman* examined whether an opt-out clause precluded a finding of procedural unconscionability.[103]  *Hoffman* held that such opt-outs did not necessarily mean arbitration was warranted.[104]  Aside from a sliding-scale, which also examines

---

[98] *Hicks,* 2006 WL 2595941, at *4.

[99] 546 F.3d 1078 (9th Cir. 2008).

[100] *Id*. at 1085.

[101] *Id*. at 1080.

[102] *Id*.

[103] *Id*. at 1084.  The findings in *Hoffman* imply that the presence of an opt-out does not affect substantive unconscionability because the Ninth Circuit did not consider the opt-out with respect to substantive unconscionability.  This makes sense given the factors considered in determining substantive unconscionability.

[104] *Hoffman*, 546 F.3d at 1085. The Court also pointed out that at least two district courts in the Circuit have determined that the ability to rescind a contract, within 21 or 30, days did not necessarily insulate waivers from procedural unconscionability.  *Id*., citing *Oestreicher v.*

---

substantive unconscionability, the Court held that a determination was required as to whether there was a "meaningful opportunity" to opt-out.[105]  *Hoffman* remanded the suit to the United States District Court for the Central District of California to expand the record and to consider how much time the expiration date "effectively" provided, how many customers actually exercised their ability to opt-out, and whether other groups used the same opt-outs.[106]  Here, the Defendants have not presented any of these facts before the Court and chose to file their Motion to Compel before even filing an Answer or Motion to Dismiss.  Moreover, as previously stated, the Plaintiffs have already shown how, procedurally, T-Mobile may change the terms at any time and how T-Mobile fails to have the consumer sign a copy of the Terms & Conditions or even notify the consumer in the service agreement that a copy slip is in a brochure inside phones it purchases.  At the very least, if the Court does not find procedural unconscionability at this juncture, the record should be expanded with respect to the issues laid out in *Hoffman*.

### 3.  HTC is Not a Party to the Arbitration Agreement and Should Not be Dismissed in Favor of Arbitration.

"Generally speaking, one must be a party to an arbitration agreement to be bound by it or invoke it."[107]  "[A]n entity that is neither a party to, nor agent for, nor beneficiary of, the contract lacks standing to compel arbitration."[108]  Here, HTC is not a party to the contract between Plaintiff Arellano and T-Mobile and is not a signatory to the contract.  Moreover, the Defendants offered no evidence that HTC is an agent of T-Mobile, or that HTC is a third party beneficiary of the contract.

---

*Alienware Corp.*, 502 F.Supp.2d 1061, 1067-68 (N.D. Cal. 2007); *Brazil v. Dell Inc.*, No. C-07-01700, 2007 WL 2255296, at *8 (N.D. Cal. Aug. 3, 2007).

[105] *Id*.

[106] *Id*.

[107] *Molecular Analytical Systems v. Ciphergen Biosystems, Inc.*, 186 Cal.App. 4th 696, 706, 111 Cal.Rptr.3d 876, 886 (2010).

[108] *Britton v. Co-Op Banking Group*, 4 F.3d 742, 744 (9th Cir. 1993).

---

The Ninth Circuit stated in *Britton v. Co-Op Banking Group* that "[i]f the parties had no intention to benefit a third party, that third party has no rights under the contract."[109]  Defendants did not meet their burden of proving that the parties (T-Mobile and Plaintiffs) intended for HTC to benefit from the contract.  Where parties are attempting to compel arbitration under a contract, it is their duty to demonstrate that the promises therein apply to them personally.[110] Furthermore, "[i]t is not enough that a literal interpretation of the contract would result in a benefit to the third party."[111]

HTC has failed to meet its burden in proving that <u>both</u> T-Mobile and Plaintiffs intended the contract to benefit HTC.  Therefore, HTC does not have standing to enforce the arbitration provision in the contract between Plaintiff and T-Mobile.

### 4.   **The FAA Does Not Preempt a Determination of Enforceability.**

The Defendants contend that, if California law dictates that the arbitration clause is unenforceable, such would be preempted by the FAA.  However, established precedent in this jurisdiction holds otherwise.

In *Laster v. AT&T Mobility, LLC*,[112] the Ninth Circuit Court of Appeals specifically held that "the Federal Arbitration Act does not preempt California unconscionability law."[113] More specifically, and also with respect to an arbitration clause in a cell phone service agreement, the Court held that the FAA does not bar either federal or state courts from applying generally applicable contract law principles and refusing to

---

[109] *Id*. at 745.

[110] *City of Hope, et al. v. Cave, LLP*, 102 Cal.App.4th 1356, 1369, 126 Cal.Rptr.2d 283, 293 (2002).

[111] *Id*. at 1370.

[112] 584 F.3d 849 (9th Cir. 2009), cert. granted May 4, 2010, *AT & T Mobility LLC v. Concepcion*, 130 S.Ct. 3322 (2010).

[113] *Id*. at 856.

enforce an unconscionable class action waiver in an arbitration clause.[114]  The California

Supreme Court has reached the same conclusion.[115]

Defendants further assume that procedural unconscionability does not exist and

that this Court could only dismiss their Motion to Compel based on substantive

unconscionability.   However, Plaintiffs never request to alter California law because

Plaintiffs claim that the arbitration clause is unconscionable both procedurally and

substantively, pursuant to a sliding scale.   Accordingly, that argument by the

Defendants is based upon speculation on top of assumption.

Defendants' argument as to an alleged discrepancy between *Discover Bank* and

California's "traditional analysis as to unconscionability" is without explanation,

against the already cited authority herein, and makes little sense.   In addition,

Defendants' argue that this Court should disregard, in any unconscionability

determination, the class that Ms. Arellano seeks to represent.   Not only is this in

contradiction of *Laster*, but it also fails to note that it is T-Mobile who tied their

Arbitration Clause, and any and all arbitration, to a class waiver.   T-Mobile made the

decision that, if it cannot have arbitration with a class waiver, it would not have it at all.

The Defendants' final argument as to the FAA simply asks that Arellano's

contract not be deemed unconscionable.   It is premised on the idea that the Court would

find this Arbitration Clause unconscionable while, at the same time, somehow stating

that all arbitration agreements are unconscionable.   Such an argument is not based on

the facts of this case nor legal authority, but rather circular argumentative rhetoric.   As

previously shown, the Arbitration Clause is unconscionable for numerous reasons.

---

[114] *Id*. (citation omitted).

[115] *Discover Bank v. Superior Court of Los Angeles*, 113 P.3d 1100, 1110-17 (Cal. 2005); s*ee also*, *e.g.*, *Homa v. Am. Express Co*., 558 F.3d 225, 231 (3rd Cir. 2009); *Lowden v. T-Mobile USA*, 512 F.3d 1213, 1219-22 (9th Cir. 2008); *Skirchak v. Dynamics Research Corp*., 508 F.3d 49, 57-59 (1st Cir. 2007); *Dale v. Comcast Corp*., 498 F.3d 1216, 1219 (11th Cir. 2007).

5. **In the Alternative, Plaintiffs' Claims for Injunctive Relief are Not Subject to the Arbitration Clause**.

Alternatively, because Plaintiffs seek injunctive relief, those claims are not subject to the arbitration provision.  Plaintiffs seek injunctive relief against T-Mobile and HTC under the California Unfair Competition Law ("UCL"), California False Advertising Law, and California Consumer Legal Remedies Act. Plaintiffs also seek injunctive relief against T-Mobile under the Federal Communications Act.

In *Kilgore v. Key Bank, National Association*,[116]  the Court held that "California law bars arbitration of injunctive relief claims brought under the UCL."  The Court's holding was made with the full knowledge that, in that case, a 60-day opt-out provision was provided in the underlying contract.[117]  Here, Plaintiffs seek injunctive relief under the UCL, on behalf of herself and the class, and in addition to injunctive relief under other California and federal statutes.

## V.   CONCLUSION

For the reasons set forth above, Plaintiffs ask the Court to deny the Defendants' Joint Motion to Compel Arbitration and Stay Claims and for such other relief as the Court deems just. Alternatively, this Court should, as in *Hoffman*, expand the record.

Respectfully submitted,

THE COREA FIRM, P.L.L.C.

Dated:  March 17, 2011          By:       /s/ Thomas M. Corea
                                          THE COREA FIRM, P.L.L.C.
                                          Thomas M. Corea, Esq.
                                          Texas State Bar No. 24037906
                                          Admitted *Pro Hac Vice*
                                          Grant B. Stock, Esq.
                                          Texas State Bar No. 24033240
                                          Admitted *Pro Hac Vice*

---

[116] No. C 08-2958 TEH, 2009 WL 1975271, *3 (N.D. Cal. July 8, 2009).
[117] *Id*. at *9.

1            1201 Elm Street, 41st Floor
Dallas, Texas 75270
2            Telephone:  (214) 953-3900
Facsimile:  (214) 953-3901
3            E-mail: tcorea@corealaw.com
E-mail: gstock@corealaw.com
4

OTSTOTT & JAMISON, P.C.
5            George A. Otstott Sr., Esq.
Texas Bar No. 15342000
6            *Pro Hac Vice* Admission Pending
Two Energy Square
7            4849 Greenville Avenue, Suite 1620
Dallas, Texas 75206
8            Telephone:  (214) 522-9999
Facsimile:  (214) 828-4388
9            E-mail: gotstott@otstottandjamison.com

10          BRYDON, HUGO & PARKER
George Avery Otstott Jr., Esq.
11          California Bar No. 184671
135 Main Street, 20th Floor
12          San Francisco, California 94105
Telephone:  (415) 808-0300
13          Facsimile: (415) 808-0333

14          Attorneys for Plaintiffs

15

16

17

18

19

20

21

22

23

24

25

26

27

28