IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STACIE LEE ARELLANO, individually and on behalf of all those similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> T-MOBILE USA, INC. and HTC AMERICA, INC., <br><br> Defendants. | No. C 10-05663 WHA <br><br><br> **ORDER GRANTING IN PART DEFENDANTS' MOTION TO COMPEL ARBITRATION AND PARTIALLY STAYING THE ACTION** |

## INTRODUCTION

In this proposed class action dispute, defendants move to compel arbitration and stay the claims. For the reasons stated below, this order **GRANTS IN PART** defendants' motion to compel arbitration. Specifically, plaintiff's seventh, eighth, and tenth claims will proceed immediately to arbitration. Plaintiff's first, second, third, fourth, fifth, sixth, and ninth claims are **STAYED**.

## STATEMENT

Defendants T-Mobile USA, Inc., and HTC America, Inc., are providers of wireless cellular telephone service. HTC allegedly designs and manufactures "T-Mobile myTouch 4G" SmartPhones, which are marketed and sold by T-Mobile.

According to T-Mobile's records, Plaintiff Stacie Lee Arellano purchased two T-Mobile myTouch 4G SmartPhones and entered into a two-year service contract at a T-Mobile retail store in East Los Angeles on November 20, 2010. The contract plaintiff signed acknowledged that the agreement with T-Mobile included T-Mobile's Terms & Conditions, and that plaintiff received, read, and accepted the Terms & Conditions. The Terms & Conditions were included in the box with the telephones sold by T-Mobile. As noted in the service contract, the Terms & Conditions were, and remain, available online at www.T-Mobile.com or by calling T-Mobile's toll-free Customer Care number.

The arbitration agreement in the Terms & Conditions provided:

> **ANY AND ALL CLAIMS OR DISPUTES IN ANY WAY RELATED TO OR CONCERNING THE AGREEMENT, OUR SERVICES, DEVICES OR PRODUCTS, INCLUDING ANY BILLING DISPUTES, WILL BE RESOLVED BY BINDING ARBITRATION, RATHER THAN IN COURT.** This includes any claims against other parties relating to Services or Devices provided or billed to you (such as our suppliers, Dealers or third party vendors) whenever you also assert claims against us in the same proceeding. We each also agree that the Agreement affects interstate commerce so that the Federal Arbitration Act and federal arbitration law apply . . . . THERE IS NO JUDGE OR JURY IN ARBITRATION, AND COURT REVIEW OF AN ARBITRATION AWARD IS LIMITED. THE ARBITRATOR MUST FOLLOW THIS AGREEMENT AND CAN AWARD THE SAME DAMAGES AND RELIEF AS A COURT (INCLUDING ATTORNEYS' FEES).

(Shwonek Decl. Exh. B ¶ 2 (emphasis in original)). The reader may wonder about the typeface used above, but that is the way it appeared in the document.

The Terms & Conditions also notified customers that they may opt out of the arbitration agreement:

> **YOU MAY CHOOSE TO PURSUE YOUR CLAIM IN COURT AND NOT BY ARBITRATION** if: (a) your claim qualifies, you may initiate proceedings in small claims court; or (b) **YOU OPT OUT OF THESE ARBITRATION PROCEDURES WITHIN 30 DAYS FROM THE DATE YOU ACTIVATED SERVICE FOR THE RELEVANT LINE (the "Opt Out Deadline").** You must opt out by the Opt Out Deadline for each line of Service. You may opt out of these arbitration procedures by calling 1-866-323-4405 or completing the opt-out form located at www.T-Mobiledisputeresolution.com. **Any opt-out received after the Opt Out Deadline will not be valid and you must pursue your claim in arbitration or small claims court.**

2

1  (*ibid.* (emphasis in original)).

2  The Terms & Conditions also contained a class-action waiver:

**WE EACH AGREE THAT ANY DISPUTE RESOLUTION PROCEEDINGS, WHETHER IN ARBITRATION OR COURT, WILL BE CONDUCTED ONLY ON AN INDIVIDUAL BASIS AND NOT IN A CLASS OR REPRESENTATIVE ACTION OR AS A MEMBER IN A CLASS, CONSOLIDATED OR REPRESENTATIVE ACTION**.

(*ibid.* (emphasis in original)).

Subscribers, however, were allowed to opt out of the class-action waiver: "**If you chose** [*sic*] **to pursue your claim in court by opting out of the arbitration provision as specified above, this Class Action Waiver provision will not apply to you**" (*ibid.* (emphasis in original)). Plaintiff, however, did not opt out of the arbitration agreement within 30 days of activating her service.

Plaintiff alleges that she was "deceived by the Defendants' misrepresentations as to the availability of '4G' SmartPhones and, because of such, [was] induced into entering long-term service contracts with T-Mobile and [was] sold HTC-manufactured SmartPhones incapable of performing as promised" (First Amd. Compl. at 2). This proposed class action originally was filed by Dustin S. Peterson on December 13, 2010. The original complaint asserted two claims against T-Mobile: (1) violation of the Federal Communications Act and (2) money had and received and unjust enrichment. On January 12, an amended complaint was filed by both Peterson and Arellano. The amended complaint asserted ten claims under state and federal law.[1]

T-Mobile was unable to find records of a subscriber named Dustin S. Peterson. On March 15, Peterson voluntarily dismissed his claims. Accordingly, the present motion is moot as to Peterson, but will proceed forward as to Arellano. As for Arellano, plaintiff originally

---

[1] The ten claims were (1) violation of California Unfair Competition Law by T-Mobile, (2) violation of California Unfair Competition Law by HTC, (3) violation of California False Advertising Law by T-Mobile, (4) violation of California False Advertising Law by HTC, (5) violation of the California Consumer Legal Remedies Act by T-Mobile, (6) violation of the California Consumer Legal Remedies Act by HTC, (7) violation of California Uniform Commercial Code Section 2312 by T-Mobile, (8) violation of California Uniform Commercial Code Section 2312 by HTC, (9) violation of the Federal Communications Act by T-Mobile, and (10) money had and received and unjust enrichment by T-Mobile.

3

1  identified herself as "Stacy Lee Arellano." Defendants note in their motion that T-Mobile's
2  records also do not reflect a subscriber named "Stacy Lee Arellano." They do, however, reflect
3  one named "Stacie Lee Arellano." Plaintiff does not directly respond to this observation, but has
4  begun to spell her name "Stacie Lee Arellano" in her opposition brief. Accordingly, this order
5  concludes that the correct spelling of plaintiff's name is "Stacie Lee Arellano."

6  Defendants now jointly move to compel arbitration and stay the claims. This order
7  follows full briefing and a hearing on the motion.

**ANALYSIS**

Plaintiff's motion to compel arbitration is governed by the Federal Arbitration Act. A district court's role under the FAA is limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. *Lifescan, Inc. v. Premier Diabetic Servs., Inc.,* 363 F.3d 1010, 1012 (9th Cir. 2004). If the district court determines that a valid arbitration agreement encompasses the dispute, then the FAA requires the court to enforce the arbitration agreement in accordance with its terms. *Ibid.* "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999) (internal quotation marks omitted).

Defendants move to compel arbitration and stay the claims on the basis that the arbitration clause in the Terms & Conditions mandates that this action be arbitrated. Plaintiff advances several arguments as to why this order should not compel arbitration. Each will be addressed in turn.

**1.   VALIDITY OF ARBITRATION AGREEMENT.**

Plaintiff argues that the arbitration agreement cannot be enforced because it is unclear. Specifically, plaintiff points to the way the service contract does not detail the terms of the arbitration agreement on its face, but rather references the Terms & Conditions, which were not appended to the agreement and were unsigned by plaintiff.

An "agreement need not expressly provide for arbitration but may instead incorporate by reference another document containing an arbitration clause." *Adajar v. RWR Homes, Inc.*, 160 Cal. App. 4th 563, 569 (2008). Furthermore, agreements packaged with a product are

4

enforceable. *Datel Holdings Ltd. v. Microsoft Corp.*, 712 F. Supp. 2d 974, 989 (N.D. Cal. 2010). T-Mobile's placement of the arbitration agreement in the Terms & Conditions, which were incorporated by reference into the service contract, does not make their presentation unclear. The Terms & Conditions were readily available. They were included in the box with the telephones sold by T-Mobile, and they also were available online at www.T-Mobile.com or by calling T-Mobile's toll-free Customer Care number.

### 2. CONSCIONABILITY OF ARBITRATION CLAUSE.

In determining whether an arbitration agreement is valid, a court may consider "generally applicable contract defenses, such as fraud, duress, or unconscionability . . . without contravening § 2 [of the FAA]." *Doctor's Assocs. Inc., v. Casarotto*, 517 U.S. 681, 687 (1996). A district court must look to state law to determine whether a valid, enforceable arbitration agreement exists. *Lowden v. T-Mobile USA, Inc.*, 512 F.3d 1213, 1217 (9th Cir. 2008). Here, California law applies to plaintiff, as her billing address is in Los Angeles.

To be deemed unenforceable under California law, an arbitration agreement must be both procedurally and substantively unconscionable. *See Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000). The inquiry into procedural validity focuses on "oppression or surprise due to unequal bargaining power," while the substantive inquiry focuses on "overly harsh or one-sided results." *Ibid.* (internal quotation marks omitted). The validity of an agreement is judged on a "sliding scale": "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Ibid.*

Under California law, procedural unconscionability arises from "an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice." *Flores v. Transamerica HomeFirst, Inc.*, 93 Cal. App. 4th 846, 853 (2001). The Ninth Circuit, applying California law, has explained that "[a] contract is procedurally unconscionable if it is a contract of adhesion, *i.e.*, a standardized contract, drafted by the party of superior bargaining strength, that relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Ting*

5

*v. AT&T*, 319 F.3d 1126, 1148 (9th Cir. 2003); *see also Flores*, 93 Cal. App. 4th at 853 ("A finding of a contract of adhesion is essentially a finding of procedural unconscionability.").

Plaintiff argues that the arbitration agreement is both procedurally and substantively unconscionable. *First*, plaintiff argues that the agreement is procedurally unconscionable because the agreement is presented to subscribers in a take-it-or-leave-it format. In support of this argument, plaintiff cites *Kaltwasser v. Cingular Wireless LLC*, 543 F. Supp. 2d 1124, 1130 (N.D. Cal. 2008), in which the court found a contract to be procedurally unconscionable when "Cingular, the party with superior bargaining power, drafted the Wireless Service Agreement and presented it to Kaltwasser in a take-it-or-leave-it format, with no opportunity for negotiation."

On the other hand, "providing a meaningful opportunity to opt out can preclude a finding of procedural unconscionability and render an arbitration provision enforceable." *Hoffman v. Citibank (S.D.), N.A.*, 546 F.3d 1078, 1085 (9th Cir. 2008) (per curiam) (internal quotation marks omitted). In support of this proposition, defendants cite *Circuit City Stores, Inc., v. Ahmed*, 283 F.3d 1198, 1199–200 (9th Cir. 2002) (finding no procedural unconscionability when the plaintiff was given the opportunity to opt out of the arbitration agreement), and *Circuit City Stores, Inc., v. Najd*, 294 F.3d 1104, 1108 (9th Cir. 2002) (same).

Here, the arbitration agreement was not presented to plaintiff in a take-it-or-leave-it format. Rather, plaintiff was given 30 days to opt out of the arbitration agreement. In addition, if she had chosen to opt out, she would not have suffered any adverse consequences as she could have continued her T-Mobile service with the same benefits and for the same price. Furthermore, the Terms & Conditions were readily available. They were included in the box with the telephones sold by T-Mobile, and they also were available online at www.T-Mobile.com or by calling T-Mobile's toll-free Customer Care number.

Plaintiff argues that this order should not follow the rule in *Ahmed* and *Najd*, because those cases are distinguishable. Plaintiff notes that in *Najd*, the Ninth Circuit distinguished the case from one in which the parties had contracted at arm's length, as the parties did here. It is true that the Ninth Circuit observed that "Najd and Circuit City were not two typical parties contracting at arm's length." *Najd*, 294 F.3d at 1109. The Ninth Circuit, however, discussed this

6

factor when it considered whether Najd's silence constituted assent to the agreement, not whether the agreement was procedurally unconscionable.

In addition, plaintiff argues that *Najd* and *Ahmed* are distinguishable because the plaintiffs there were advised of the legal consequences of failing to opt out as well as the mechanisms by which they could do so. On the contrary, T-Mobile advised plaintiff of both the legal consequences of failing to opt out and the mechanisms by which she could do so. In regards to the legal consequences of failing to opt out, the arbitration agreement warned:

> THERE IS NO JUDGE OR JURY IN ARBITRATION, AND COURT REVIEW OF AN ARBITRATION AWARD IS LIMITED. THE ARBITRATOR MUST FOLLOW THIS AGREEMENT AND CAN AWARD THE SAME DAMAGES AND RELIEF AS A COURT (INCLUDING ATTORNEYS' FEES).

(Shwonek Decl. Exh. B ¶ 2 (emphasis in original)). As for the mechanisms by which to opt out, plaintiff was advised, "You may opt out of these arbitration procedures by calling 1-866-323-4405 or completing the opt-out form located at www.T-Mobiledisputeresolution.com." (*ibid.*).

*Second*, plaintiff argues that the agreement is procedurally unconscionable because T-Mobile has the right to unilaterally terminate, change, alter, or amend the agreement. Plaintiff does not have standing to challenge the change-in-terms provision, because it has never been applied to her; T-Mobile has not made any changes to the Terms & Conditions since plaintiff bought service on November 20, 2010. *See Lee v. Am. Express Travel Related Servs., Inc.*, 348 Fed. App'x 205, 207 (9th Cir. 2009) ("Plaintiffs cannot satisfy the requirements of Article III because they have not yet been injured by the mere inclusion of these provisions in their agreements, nor is the threat of future harm from such provisions sufficiently imminent to confer standing."). This order does not comment on whether the change-in-terms provision, if applied to plaintiff, would be unconscionable.

*Third*, plaintiff argues that the agreement is procedurally unconscionable because the Terms & Conditions containing the agreement were not signed nor appended to the service contract. In support of this argument, plaintiff cites *Pokorny v. Quixtar, Inc.*, 601 F.3d 987 (9th Cir. 2010). It is true that in *Pokorny*, when finding that the alternative dispute resolution agreement was procedurally unconscionable, the Ninth Circuit considered, among other factors,

7

that "Quixtar failed to attach a copy of the Rules of Conduct, containing the full description of the non-binding conciliation and binding arbitration processes, to the registration forms containing the Agreement to Arbitrate, or to the BSMAA [Business Support Materials Arbitration Agreement]." *Id.* at 997. As a result, "Plaintiffs were not even given a fair opportunity to review the full nature and extent of the non-binding conciliation and binding arbitration processes to which they would be bound before they signed the registration agreements or the BSMAA." *Ibid.*

Here, however, even though the Terms & Conditions were not appended to the service contract, they were readily available. The Terms & Conditions were included in the box with the telephones sold by T-Mobile, and they also were available online at www.T-Mobile.com or by calling T-Mobile's toll-free Customer Care number.

Plaintiff argues in the alternative that if this order does not find procedural unconscionability, the record should be expanded in order to determine whether there was a meaningful opportunity to opt out of the agreement. In support of this argument, plaintiff cites *Hoffman*. In *Hoffman*, the Ninth Circuit remanded to the district court, instructing that the record be expanded. The Ninth Circuit did so because the district court had not properly followed the requisite California choice-of-law analysis when deciding whether to apply California or South Dakota law. *Hoffman*, 546 F.3d at 1082–83. That problem has no applicability here.

This order finds that the arbitration agreement is not procedurally unconscionable. Accordingly, the substantive conscionability of the agreement will not be addressed. The arbitration agreement is enforceable.

### 3. APPLICABILITY OF ARBITRATION AGREEMENT TO HTC.

Plaintiff argues that HTC does not have standing to enforce the arbitration agreement because HTC is not a party to nor third party beneficiary of the service contract.

"Generally speaking, one must be a party to an arbitration agreement to be bound by it or invoke it." *Molecular Analytical Sys. v. Ciphergen Biosystems, Inc.*, 186 Cal. App. 4th 696, 706 (2010) (internal quotation marks omitted). In certain circumstances, however, a nonsignatory to an arbitration clause may compel a signatory to arbitrate. *See Britton v. Co-op Banking Group*, 4 F.3d 742, 744 (9th Cir. 1993). In order to compel a signatory to arbitrate, a nonsignatory must

8

be (1) a third-party beneficiary to the contract, (2) a successor in interest to the contract, or (3) an agent intended to benefit from the arbitration clause. *Id.* at 745–48. As for third-party beneficiaries, "[i]f the parties to the contract had no intention to benefit a third party, that third party has no rights under the contract." *Id.* at 745.

Here, the plain meaning of the arbitration agreement evinces an intent to include claims against third parties, such as HTC. The agreement requires arbitration for "any claims against other parties [besides T-Mobile] relating to Services or Devices provided or billed to [the subscriber] (such as [T-Mobile's] suppliers, Dealers or third party vendors) whenever [the subscriber] also assert[s] claims against [T-Mobile] in the same proceeding" (Shwonek Decl. Exh. B ¶ 2). Plaintiff asserts claims against HTC "relating to . . . Devices provided or billed to" plaintiff. That is, plaintiff alleges that the HTC myTouch 4G phone is not a 4G device. HTC is a supplier and third-party vendor to T-Mobile. Accordingly, plaintiff's claims against HTC are arbitrable.

### 4. APPLICATION OF ARBITRATION CLAUSE TO CLAIMS FOR INJUNCTIVE RELIEF.

Plaintiff seeks injunctive relief, among other remedies, for her claims brought under the California Unfair Competition Law, California Consumer Legal Remedies Act, California False Advertising Act, and Federal Communications Act. Plaintiff argues that these claims for injunctive relief are not subject to arbitration. This proposition comes from *Broughton v. Cigna Healthplans of Cal.*, 21 Cal. 4th 1066, 1079–80 (1999) (holding that claims for public injunctive relief brought under the CLRA are not subject to arbitration) and *Cruz v. PacifiCare Health Sys., Inc.*, 30 Cal. 4th 303, 316 (2003) (holding that claims for public injunctive relief brought under the UCL are not subject to arbitration).

A reasonable argument can be made and is made, however, that at least for cases in federal court, the FAA preempts application of this exemption of claims for public injunctive relief from arbitration. *See Southland Corp. v. Keating*, 465 U.S. 1, 10–11 (1984) (explaining that the only two limitations on the enforceability of arbitration provisions governed by the FAA are those explicitly laid out by Congress in the FAA, and there is "nothing in the Act indicating that the broad principle of enforceability is subject to any additional limitations under State law").

9

1  Currently pending in the United States Supreme Court is the issue of whether the FAA preempts
2  California's unconscionability law. *Laster v. AT&T Mobility LLC*, 584 F.3d 849 (9th Cir. 2009),
3  *cert. granted sub nom. AT&T Mobility LLC v. Concepcion*, 130 S. Ct. 3322 (2010). Since there
4  will be a decision on the matter by the end of the current Supreme Court term, this order will not
5  make a final decision regarding this issue at this time. This order **STAYS** further proceedings on
6  the relevant claims until the Supreme Court issues its decision. Both sides shall submit further
7  briefing of the matter within **TEN CALENDAR DAYS** of the date on which the Supreme Court issues
8  its decision, after which this issue shall be decided without further argument.

**CONCLUSION**

For the foregoing reasons, defendants' motion to compel arbitration is **GRANTED IN PART** as follows.

Plaintiff's seventh, eighth, and tenth claims, which do not seek injunctive relief, will proceed immediately to arbitration. The parties are **ORDERED** to proceed immediately to arbitration of these claims. The Court shall retain jurisdiction to enforce any award. Further litigation of these claims is **STAYED** pending arbitration. There will be a further case management conference at **11:00 A.M. ON DECEMBER 8, 2011**, to assess wether the arbitration is proceeding apace. If not, the stay for arbitration may be lifted.

Plaintiff's first, second, third, fourth, fifth, sixth, and ninth claims for injunctive relief are **STAYED** pending the Supreme Court's decision in *AT&T Mobility LLC v. Concepcion*. No further action shall be taken in regards to those claims until the stay is lifted. Specifically, defendants' request for leave to file a motion to dismiss is **DENIED** without prejudice to renewal after the arbitrability question is settled. Within **TEN CALENDAR DAYS** after the Supreme Court issues its decision, both sides shall submit supplemental briefing on the arbitration issue, which will then be decided without further argument.

**IT IS SO ORDERED.**

Dated: April 11, 2011.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

10