```
                                        PAGES 1 - 18

           UNITED STATES DISTRICT COURT

         NORTHERN DISTRICT OF CALIFORNIA

       BEFORE THE HONORABLE WILLIAM H. ALSUP

STACY LEE ARELLANO AND DUSTIN S.    )
PETERSON, INDIVIDUALLY AND ON       )
BEHALF OF ALL THOSE SIMILARLY       )
SITUATED,                           )
                                    )
            PLAINTIFF,              )
                                    )
   VS.                              ) NO. C 10-5663 WHA
                                    )
T-MOBILE USA, INC. AND HTC          )
AMERICA, INC.,                      )
                                    ) SAN FRANCISCO, CALIFORNIA
            DEFENDANTS.             ) THURSDAY
                                    ) MARCH 29, 2012
_____)
```

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

**FOR PLAINTIFF**         COREA TRIAL GROUP, LLC
                          TWENTY28 FARRINGTON STREET
                          DALLAS, TEXAS   75207
                    **BY: THOMAS M. COREA, ESQUIRE**

**FOR DEFENDANTS**        DAVIS, WRIGHT, TREMAINE, LLP
                          1201 THIRD AVENUE, SUITE 2200
                          SEATTLE, WASHINGTON 98101
                    **BY: JAMES C. GRANT, ESQUIRE**

                          MUNGER, TOLLES & OLSON
                          560 MISSION STREET, 27TH FLOOR
                          SAN FRANCISCO, CALIFORNIA  94105
                    **BY: SARALA NAGALA, ESQUIRE**

*REPORTED BY:  JOAN MARIE COLUMBINI, CSR 5435, RPR*
*              OFFICIAL COURT REPORTER, U.S. DISTRICT COURT*

**PROCEEDINGS; THURSDAY, MARCH 29, 2012**

**THE COURT:** NOW WE GO TO STACEY ARELLANO VERSUS T-MOBILE CASE.

**THE CLERK:** CASE NO. IS 10-5663.

**MR. COREA:** GOOD MORNING, YOUR HONOR. THOMAS COREA ON BEHALF OF THE PLAINTIFFS.

**MR. GRANT:** GOOD MORNING, YOUR HONOR. JIM GRANT ON BEHALF OF DEFENDANT T-MOBILE.

**MS. NAGALA:** GOOD MORNING, YOUR HONOR. SARALA NAGALA ON BEHALF OF DEFENDANT HTC.

**THE COURT:** ALL RIGHT. THIS IS A CASE THAT I HAD TO EITHER DISMISS OR STAY, I GUESS STAY ONLY BECAUSE OF MY VIEW THAT IF THE -- IF THE PARTIES DON'T GET -- IF THERE'S ANY UNDUE DELAY IN THE ARBITRATION, I WILL LIFT THE STAY AND LET THE CASE GO FORWARD HERE. WHAT I'M READING HERE IS THE PLAINTIFF SAT ON HIS RIGHTS AND JUST DIDN'T -- OR HER RIGHTS IN THIS CASE AND DIDN'T FILE FOR ANY KIND OF ARBITRATION.

SO, I WANT TO GET TO THE BOTTOM OF WHAT HAPPENED HERE AND EITHER DISMISS THIS CASE OR FIGURE OUT WHAT THE RIGHT STEP IS.

LET'S HEAR FROM THE PLAINTIFF FIRST.

**MR. COREA:** THANK YOU, YOUR HONOR. I THINK WHAT I'D LIKE TO INFORM THE COURT OF IS, SINCE THE COURT'S ORDER, WE'VE GONE BACK AND DONE EXTENSIVE INVESTIGATION ON BEHALF OF

```
 1  MS. ARELLANO AND TRIED TO DETERMINE WHAT, IF ANY, CLAIMS SHE
 2  COULD STILL ASSERT BEFORE THIS COURT THAT WERE DIFFERENT THAN
 3  THOSE THAT WERE COMPELLED TO ARBITRATION THAT PERHAPS WOULD NOT
 4  BE SUBJECT TO ARBITRATION.
 5          AS I AM SURE THE COURT IS AWARE, WE HAVE SINCE THEN
 6  THE NINTH CIRCUIT'S OPINION IN THE KOLOFF CASE DEALING WITH
 7  WARRANTY CASES, ISSUES LIKE THAT.
 8          IN ADDITION, SINCE THAT TIME, WE'VE HAD ANOTHER
 9  PLAINTIFF THAT HAS COME ALONG WHO APPARENTLY HAD OPTED OUT; IN
10  FACT, HAS OPTED OUT OF THE T-MOBILE ARBITRATION CLAUSE AND IS
11  PRESENTLY BEFORE THE COURT.
12          **THE COURT:**  BEFORE ME OR SOMEONE ELSE?
13          **MR. COREA:**  PARDON ME?
14          **THE COURT:**  WHICH JUDGE?
15          **MR. COREA:**  YOUR HONOR, IT'S BEFORE YOUR COURT.
16          **THE COURT:**  WHO IS THAT?  I DON'T EVEN KNOW ABOUT
17  THAT CASE.
18          **MR. COREA:**  WELL, YOUR HONOR, THE OTHER DAY WE HAD
19  FILED A MOTION TO -- EXCUSE ME -- A MOTION TO LIFT THE STAY,
20  AND WE ALSO FILED A MOTION FOR LEAVE TO FILE A SECOND AMENDED
21  COMPLAINT THAT WOULD ADD A CLAIM ON BEHALF OF THIS NEW PARTY,
22  MS. CARMELIA YANCEY, AND ALSO MS. ARELLANO AS TO CLAIMS THAT
23  HAD NOT PREVIOUSLY BEEN BROUGHT BEFORE THE COURT.  THAT MATTER
24  IS SET FOR BRIEFING IN EARLY APRIL.
25          AND, YOUR HONOR, WE BELIEVE THAT PENDING THE COURT'S
```

1  DETERMINATION ON WHETHER OR NOT MS. ARELLANO IS PERMITTED TO
2  HAVE LEAVE TO FILE AN AMENDED COMPLAINT, THAT WOULD ESSENTIALLY
3  MOOT HER NECESSITY TO PROCEED WITH ANY CLAIMS THAT SHE MAY HAVE
4  IN ARBITRATION.
5             **THE COURT:**  WELL, ALL RIGHT.  SO WHEN IS THIS MOTION
6  SET FOR HEARING THAT YOU JUST DESCRIBED?
7             **MR. GRANT:**  MAY 3RD I THINK WAS CALENDARED BY THE
8  COURT.
9             **MR. COREA:**  I BELIEVE THAT THAT'S CORRECT.
10            **THE COURT:**  ALL RIGHT.  WHAT DOES THE DEFENDANT SAY?
11            **MR. GRANT:**  YOUR HONOR, LET'S SORT OF GO BACK TO THE
12  HISTORY.
13            THE COURT GRANTED TWO MOTIONS TO COMPEL ARBITRATION,
14  DIRECTING MS. ARELLANO AND ALL OF HER CLAIMS WERE SUBJECT TO
15  ARBITRATION, COULD ONLY BE ARBITRATED ON AN INDIVIDUAL BASIS,
16  AND THIS CASE COULD NOT PROCEED AS A CLASS ACTION.  CLASS
17  ACTION WAIVER IS ENFORCEABLE.
18            NINTH CIRCUIT PRECEDENT ACTUALLY SINCE THEN HAS
19  CONFIRMED EXACTLY WHAT THE COURT'S DECISION WAS.  THAT WAS
20  ABOUT TEN MONTHS AGO.
21            TEN MONTHS AGO THE COURT'S DEADLINE FOR ANY
22  AMENDMENTS TO THE COMPLAINT, ANY ADDITIONAL PARTIES PASSED.
23  THAT WAS ON MAY 31ST OF LAST YEAR.  FOR TEN MONTHS THE COURT
24  HAS BEEN DIRECTING MS. ARELLANO TO INDICATE WHETHER SHE'S GOING
25  TO PROCEED WITH ARBITRATION.

1            AT OUR LAST CMC, PLAINTIFF'S COUNSEL DIDN'T SHOW.  WE

2   ASKED -- WE CONTINUED THAT CMC.  WE CAME BACK THIS TIME AND

3   HAVE SAID TO THE COURT, NOW, HAVING PASSED TEN MONTHS, IT'S

4   APPARENT MS. ARELLANO HAS NO INTEREST IN PURSUING HER CLAIMS BY

5   ARBITRATION.  THE COURT HAS DIRECTED THAT IS THE WAY SHE MUST

6   PURSUE THEM.

7            THEREFORE, WE THINK A DISMISSAL UNDER 41(B) FOR WANT

8   OF PROSECUTION AND FOR VIOLATION OF THE COURT'S ORDER IS

9   APPROPRIATE, AND THAT'S WHAT WE'VE ASKED FOR.

10            AT THIS STAGE, IT'S NOT A QUESTION OF MS. ARELLANO

11   COMING BACK TO ADD NEW CLAIMS.  IF YOU KEEP GETTING TO DO THAT,

12   WHAT'S THE POINT OF THE COURT'S ORDER PREVIOUSLY AS TO ALL OF

13   HER CLAIMS WERE SUBJECT TO ARBITRATION.

14            WE THINK IF MS. YANCEY, WHO APPARENTLY IS MR. COREA'S

15   OTHER PLAINTIFF, IF MS. YANCEY HAS SOME SEPARATE CASE, AS THE

16   COURT SUGGESTED, SHE SHOULD FILE THAT IN A SEPARATE COMPLAINT

17   AND PURSUE THAT, NOT AS TO MS. ARELLANO.  MS. ARELLANO'S SHOULD

18   BE DISMISSED.

19            **THE COURT:**  I'M SORRY TO BE SO UNINFORMED ON THE

20   OTHER CASE.  WHAT WAS THE NAME OF THE OTHER PLAINTIFF?

21            **MR. GRANT:**  CARMELIA YANCEY.

22            **THE COURT:**  YANCEY?

23            **MR. GRANT:**  CORRECT.

24            **MR. COREA:**  THAT IS THE PROPOSED PLAINTIFF IN THE

25   SECOND AMENDED COMPLAINT.

1        **THE COURT:** IS THAT A BRAND NEW CASE THAT'S BEEN
2   ASSIGNED TO ME, OR IS THAT A MOTION TO REOPEN THIS CASE TO ADD
3   A NEW PLAINTIFF?
4        **MR. COREA:** YOUR HONOR, IT'S PRESENTLY BEFORE
5   YOURSELF IN THE FORM OF A MOTION TO, FIRST TO LIFT THE STAY,
6   AND, SECONDLY, TO FOR LEAVE TO AMEND TO FILE A SECOND AMENDED
7   COMPLAINT THAT WOULD ASSERT DIFFERENT CLAIMS THROUGH
8   MS. ARELLANO THAN THOSE THAT WERE COMPELLED TO ARBITRATION.
9        **THE COURT:** WHAT TOOK TEN MONTHS TO COME UP WITH
10  THAT?
11       **MR. COREA:** WELL, YOUR HONOR, THE *KOLOFF* DECISION.
12       **THE COURT:** WHAT?
13       **MR. COREA:** REALLY, AND A LOT OF INVESTIGATION AS
14  TO --
15       **THE COURT:** WHY DIDN'T THE INVESTIGATION GET DONE
16  BEFORE YOU FILED YOUR FIRST LAWSUIT?
17       **MR. COREA:** YOUR HONOR, AT THE TIME WE HADN'T HAD
18  THAT.
19       **THE COURT:** PLUS, YOU DIDN'T SHOW UP AT THE LAST
20  HEARING.
21       **MR. COREA:** PARDON ME?
22       **THE COURT:** YOU DIDN'T EVEN SHOW UP AT THE LAST
23  HEARING.
24       **MR. COREA:** WELL, REGRETFULLY, YOUR HONOR, I WANT TO
25  APOLOGIZE TO THE COURT IN THAT REGARD.  UNFORTUNATELY I HAD A

1  CALENDARING ERROR.  I DO APOLOGIZE TO YOUR HONOR AND COUNSEL
2  FOR MY NON-APPEARANCE IN THAT REGARD.  CERTAINLY, WE'LL MAKE
3  ANY EFFORT TO AVOID ANY SUCH THING IN THE FUTURE.  WE WERE IN A
4  POSITION OF EVOLVING LAW, IF YOU WILL, AND I BELIEVE THERE HAD
5  BEEN ONGOING COMMUNICATIONS BETWEEN DEFENSE COUNSEL AND MYSELF,
6  MY OFFICE, THAT WE ANTICIPATED FILING A SECOND AMENDED
7  COMPLAINT.
8         AT ONE POINT WE, IN FACT, DID, AND MR. GRANT HAD
9  PROPERLY POINTED OUT THAT, WAIT A MINUTE, THE CASE IS STAYED,
10 AND IN LIGHT OF THAT, I SAID, THAT'S A GOOD POINT.  WE WITHDREW
11 THAT MOTION AND WENT BACK, AND WE WANTED TO FURTHER INVESTIGATE
12 CERTAIN FACTS AND ISSUES THAT HAD BEEN BROUGHT UP BY HTC'S
13 COUNSEL TO MAKE SURE WE BELIEVE MS. YANCEY WAS A PROPER PARTY
14 TO ASSERTING SUCH CLAIMS.
15        **THE COURT:**  HOW COULD SHE HAVE OPTED OUT OF THE
16 ADHESION CONTRACT?  THAT'S A DEFINITION OF AN ADHESION
17 CONTRACT.  YOU CAN'T OPT OUT OF IT.
18        **MR. COREA:**  IN THAT REGARD, YOUR HONOR, I'D ASK YOU
19 RECONSIDER YOUR RULING ON MS. ARELLANO.
20        **THE COURT:**  I CAN'T.  IF I WAS ON THE SUPREME COURT,
21 WHICH I'M NOT, AND THEY WOULDN'T EVEN CONSIDER ME FOR THAT, I
22 THINK IT'S A TERRIBLE RULE THAT THESE ARBITRATION CLAUSES ARE
23 BEING ENFORCED ON THESE ADHESION CONTRACTS AGAINST GOOD,
24 HARD-WORKING AMERICANS WHO LIVE PAYCHECK TO PAYCHECK.
25        BUT I WANT YOU TO ALSO KNOW I WILL FOLLOW THE LAW

```
 1  WHETHER I LIKE IT OR NOT.  I HELD MY NOSE WHEN I SIGNED THAT
 2  LAST ORDER, BECAUSE I THINK IT IS WRONG AS A MATTER OF PUBLIC
 3  POLICY.  HOWEVER, I AM OBLIGATED TO FOLLOW THE LAW OF THE
 4  SUPREME COURT AND CONGRESS, AND THAT'S WHAT I'M GOING TO DO.
 5          SO, TOO BAD FOR YOU.  YOU LOST ON THAT.  AND THE
 6  LAW'S GOT WORSE SINCE THEN.  HOW CAN YOU OPT OUT OF AN ADHESION
 7  CONTRACT?
 8          **MR. COREA:**  WELL, YOUR HONOR, THE CONTRACT ITSELF
 9  GIVES THE PARTIES 30 DAYS AFTER THE BEGINNING OF THE CONTRACT
10  TO OPT OUT EITHER BY CALLING T-MOBILE OR E-MAILING THEM.
11  THERE'S VARIOUS WAYS.
12          **THE COURT:**  HOW DID SHE DO IT?
13          **MR. COREA:**  SHE CALLED IN PURSUANT TO THE EXACT
14  INSTRUCTIONS THAT WERE PROVIDED IN THE CONTRACT.
15          **THE COURT:**  IS THERE ANY RECORD OF THAT?
16          **MR. COREA:**  YES, SIR, THERE IS.
17          **THE COURT:**  WHAT'S THE RECORD?
18          **MR. COREA:**  WELL, IT IS PHONE RECORDS AND HER
19  AFFIDAVIT.  IT WAS DOCUMENTATION AS TO HER FOLLOWING THAT
20  PROCESS.
21          **THE COURT:**  WELL, I CAN'T RULE ON THAT MOTION.  IF
22  THAT'S SET FOR MAY 5TH, I WILL HEAR THAT MOTION THEN OR RULE ON
23  IT IN ADVANCE.
24          BUT THERE'S SOME THINGS THAT DISTURB ME HERE, AND
25  THAT IS TEN MONTHS IS A LONG TIME.  YOU ARE GOING TO HAVE TO
```

1  HAVE A HAVE GOOD EXCUSE FOR HAVING SAT ON THIS CASE FOR TEN

2  MONTHS WHILE ALL THE TIME I THOUGHT IT WAS OUT THERE BEING

3  ARBITRATED.  IN FACT, COME TO FIND OUT, IT'S NOT BEEN

4  ARBITRATED AT ALL.

5        **MR. COREA:**  WELL, YOUR HONOR, IF I MAY ALSO COMMENT?

6  THAT ARBITRATION WAS NOT A CLAIM I WAS PREPARED TO UNDERTAKE ON

7  BEHALF OF MS. ARELLANO, AND IN THAT REGARD I INFORMED

8  MS. ARELLANO THAT I --

9        **THE COURT:**  YOU SHOULD HAVE INFORMED ME AT SOME POINT

10 SINCE I STAYED THE CASE --

11       **MR. COREA:**  YES, SIR.

12       **THE COURT:**  -- SO THAT YOU COULD GO GET A PROMPT

13 ARBITRATION.

14       INSTEAD, YOU JUST BLEW ME OFF AND LET ME DANGLE IN

15 COMPLETE IGNORANCE AS TO WHAT WAS GOING ON, ALL THE TIME YOU

16 THINKING I'M NOT GOING TO ARBITRATE THAT CASE.

17       **MR. COREA:**  I APOLOGIZE IF I'VE GIVEN THE COURT THAT

18 IMPRESSION.

19       **THE COURT:**  THAT'S WHAT YOU DID.

20       **MR. COREA:**  I APOLOGIZE.  I DID.  OBVIOUSLY, I WOULD

21 NEVER INTEND TO DO SO.

22       **THE COURT:**  LOOK, HERE'S WHERE WE ARE:  I'M NOT GOING

23 TO THROW THE CASE OUT.  MR. GRANT, THERE'S A PENDING MOTION.  I

24 CAN'T DO THAT.  I AM NOT SURE THAT I SHOULD DO THAT.  I'M GOING

25 TO HEAR MS. YANCEYS' MOTION WHENEVER MAY 5TH COMES, OR IF I

```
 1  DON'T HEAR IT, I MIGHT RULE ON IT IN ADVANCE.  I'M NOT GOING TO
 2  TERMINATE THE CASE RIGHT NOW.
 3            YES, MR. GRANT.
 4            MR. GRANT:  THERE ARE TIMES WHEN THE --
 5            THE COURT:  YOU HAVE TO HOLD YOUR NOSE, TOO, EVERY
 6  NOW AND THEN AND SAY, I DISAGREE WITH THAT JUDGE, BUT, YOU
 7  KNOW, I'VE GOT TO PUT UP WITH HIM.
 8            MR. GRANT:  MAY I HAVE A MOMENT OR -- I WANT TO GO
 9  BACK JUST A MOMENT ABOUT THE HISTORY, BECAUSE MR. COREA
10  SUGGESTS THAT HE ACTUALLY DID PROPOSE TO AMEND THE COMPLAINT
11  FOR MS. YANCEY TEN MONTHS AGO.
12            THE COURT:  I'M SORRY?
13            MR. GRANT:  HE PROPOSED TO AMEND THE COMPLAINT IN
14  THIS CASE TO BRING IN MS. YANCEY AS A PLAINTIFF.
15            THE COURT:  TEN MONTHS AGO?
16            MR. GRANT:  TEN MONTHS AGO.
17            THE COURT:  I DO NOT REMEMBER.
18            MR. COREA:  I DON'T RECALL IT BEING THAT LONG AGO.
19            THE COURT:  IS THAT ON THE RECORD?
20            MR. GRANT:  IT IS IN THE RECORD.
21            THE COURT:  WHEN YOU DO YOUR OPPOSITION, PUT THAT IN
22  THERE.
23            MR. GRANT:  MY POINT IS, OBVIOUSLY, IF WE RETURN TO
24  THIS MOTION, HE'S GOING TO HAVE TO SHOW GOOD CAUSE.  WE ARE
25  UNDER RULE 16, NOT RULE 15.
```

1        BUT MY POINT IS AT THAT TIME HE WITHDREW THAT MOTION.
2   WE WENT BACK TO HIM, WE SUGGESTED THAT MS. YANCEY DOES NOT HAVE
3   AN OPT-OUT RIGHT.  HE'S ABSOLUTELY WRONG ABOUT THAT.
4            **THE COURT:**  HOW DO YOU KNOW SHE DIDN'T CALL IN?
5            **MR. GRANT:**  WE KNOW SHE CALLED; WE KNOW SHE DIDN'T
6   QUALIFY.
7            **THE COURT:**  WHAT?
8            **MR. GRANT:**  WE KNOW SHE DIDN'T QUALIFY.  ALL SHE DID
9   WAS CHANGE HER RATE PLAN, YOUR HONOR.  YOU ACTUALLY HAVE TO
10  ACTIVATE SERVICE, AND SHE HADN'T DONE THAT.  SO IT'S A
11  DIFFERENT --
12           **THE COURT:**  I DON'T UNDERSTAND.  SO SHE CALLED IN,
13  BUT SHE WAS NEVER A CUSTOMER?
14           **MR. GRANT:**  NO, NO, NO.  SHE WAS A CUSTOMER.  SHE WAS
15  ALREADY AN EXISTING CUSTOMER.  TO BE HONEST, IT LOOKS VERY
16  SUSPICIOUS WHY SHE CAME IN TO DO THIS, BUT ALL SHE DID WAS
17  CHANGE HER RATE PLAN.  SHE HAS NOT ACTIVATED NEW SERVICE.
18           **THE COURT:**  IS THERE A RECORDING SOMEWHERE THAT
19  PROVES WHAT SHE TALKED ABOUT?
20           **MR. GRANT:**  WE HAVE CUSTOMER RECORDS THAT TALK
21  EXACTLY --
22           **THE COURT:**  DO THE CUSTOMER RECORDS SHOW -- DID
23  OPT-OUT COME UP?
24           **MR. GRANT:**  THE CUSTOMER RECORDS SHOWED SHE LATER
25  CALLED AND PURPORTED TO OPT OUT.  IT'S NOT EFFECTIVE.

1    **THE COURT:** WHY NOT?

2    **MR. GRANT:** BECAUSE IT WASN'T A QUALIFYING EVENT.
3    SHE DIDN'T ACTUALLY ACTIVATE SERVICE.

4    THE POINT OF THE OPT-OUT IS WHEN YOU FIRST START OUT
5    SERVICE WITH T-MOBILE, YOU HAVE AN OPT-OUT RIGHT FROM THE
6    ARBITRATION AGREEMENT. IF YOU ADD A LINE OF SERVICE WITH
7    T-MOBILE, YOU HAVE AN OPT-OUT RIGHT FOR THAT LINE OF SERVICE.

8    IF YOU SIMPLY CHANGE YOUR RATE PLAN, MAKE A CHANGE
9    THAT IS THAT DE MINIMIS, YOU DO NOT HAVE AN OPT-OUT RIGHT AT
10   THAT POINT.

11   SO MS. YANCEY WAS TRYING TO OPT OUT AT THE TIME, BUT
12   SHE CAN'T DO IT.

13   **THE COURT:** THAT'S AN ADHESION CONTRACT. I TOLD YOU,
14   YOU'RE STUCK WITH IT.

15   **MR. COREA:** YOUR HONOR, THERE'S SOME FACTUAL ISSUES,
16   TO THE EXTENT YOU'RE INTERESTED, I WOULD LOVE TO TOUCH ON
17   BRIEFLY.

18   **THE COURT:** IS IT TRUE YOU MADE THIS MOTION AND
19   WITHDREW IT EIGHT TO TEN MONTHS AGO?

20   **MR. COREA:** I DON'T BELIEVE THAT TIMING IS ACCURATE.

21   **THE COURT:** WHAT IS THE RIGHT TIME?

22   **MR. COREA:** THERE WERE OTHER REASONS AND ISSUES I
23   CAN'T OFF THE TOP OF MY HEAD RECALL. MR. GRANT MAY, IN FACT,
24   BE RIGHT ON THAT. THERE WERE OTHER ISSUES BROUGHT TO OUR
25   ATTENTION THAT REQUIRED OUR FURTHER INVESTIGATION.

1        **MR. GRANT:**  IT WAS, BY THE WAY --

2        **THE COURT:**  I DON'T KNOW.  THERE WOULD HAVE TO BE AN

3   EXCEEDINGLY GOOD REASON TEN MONTHS LATER FOR YOU TO TRY TO DO

4   THIS.

5        **MR. GRANT:**  YOUR HONOR, FOR THE RECORD, IT WAS DOCKET

6   NUMBER 83.  IT WAS ON MAY 31ST, 2011.  IT WAS WITHDRAWN TWO

7   WEEKS LATER.

8        **MR. COREA:**  YOUR HONOR, WITH RESPECT TO THAT CONTRACT

9   FOR MS. YANCEY?

10       **THE COURT:**  YES.

11       **MR. COREA:**  SHE WENT INTO A T-MOBILE STORE BECAUSE

12  SHE WANTED THE NEW 4G SERVICE, BOUGHT A NEW 4G PHONE.

13            SHE WAS, AS WE KNOW FROM OUR DISCUSSION ON

14  MS. ARELLANO'S CASE, HER NEW CONTRACT, NOW CONTAINING A 30-DAY

15  OPT-OUT RIGHT, WAS CONTAINED IN THAT PACKAGE.  SO SHE WAS GIVEN

16  A NEW CONTRACT, AND THE OLD CONTRACT DIDN'T HAVE ANY OPT-OUT

17  RIGHTS.

18            SO T-MOBILE IS REALLY KIND OF TALKING ON BOTH SIDES

19  OF THEIR MOUTH.  THEY'RE SAYING YOU ARE BOUND BY THE OLD

20  CONTRACT EVEN THOUGH WE GAVE YOU A NEW CONTRACT THAT GAVE YOU

21  NEW RIGHTS, AND, IN ADDITION, YOU ARE PAYING FOR NEW AND

22  ADDITIONAL SERVICE.

23       **MR. GRANT:**  IF I MAY?

24            THE FUNDAMENTAL PROBLEM WITH THIS IS THIS ISN'T A

25  CLASS CASE.  ONCE THE COURT ORDERED THAT MS. ARELLANO HAD TO

1  ARBITRATE HER CLAIMS INDIVIDUALLY AND RULED THERE WAS NO CLASS
2  ACTION, MS. ARELLANO HAD THE OPPORTUNITY TO GO FORWARD WITH
3  ARBITRATION.
4        YOU DON'T HAVE A REVOLVING DOOR THAT YOU GET TO NOW
5  SAY, YOU KNOW WHAT, YOU DIDN'T LIKE MR. PETERSON -- YOU RECALL
6  HIM?  THAT WAS THE FIRST PLAINTIFF MR. COREA BROUGHT IN.  THERE
7  WERE PROBLEMS WITH HIS CLAIMS --
8        **THE COURT:**  I'VE FORGOTTEN.  ALL RIGHT.  I'LL JUST
9  TAKE YOUR WORD FOR IT.
10        **MR. GRANT:**  NONETHELESS --
11        **THE COURT:**  MS. ARELLANO WAS NUMBER TWO?
12        **MR. GRANT:**  ARELLANO WAS NUMBER TWO.  NOW, ARELLANO
13  HAS TO GO TO ARBITRATION.  NOW HIS SUGGESTION, NEVER MIND THAT,
14  WE WILL BAIT AND SWITCH AND BRING IN A NEW PLAINTIFF, THAT WILL
15  BE MS. YANCEY.  HE PROPOSED THAT TEN MONTHS AGO, THEN HE
16  SUGGESTED NOT TO DO THAT.
17        AS FAR AS I KNOW FROM LOOKING AT THE NINTH CIRCUIT
18  CASE LAW, YOU ONLY LOOK AT THIS IDEA OF SUBSTITUTING A
19  PLAINTIFF IF YOU HAVE A CERTIFIED CLASS ACTION, THEN THE CASE
20  HAS A DIFFERENT -- IT HAS A DIFFERENT LIFE.  IT HAS A DIFFERENT
21  ASPECT.
22        IN THE SITUATION WE'RE IN INSTEAD, WHAT WE HAVE IS
23  INDIVIDUAL CLAIMS THAT WERE BROUGHT BY MS. ARELLANO AND WERE
24  STAYED FULLY BY THE COURT WITH THE DIRECTION THAT THEY COULD
25  ONLY BE ARBITRATED.

1            **THE COURT:** NO.  I SAID THAT IF THE ARBITRATION
2   DIDN'T GET GOING, THAT I WOULD CONSIDER LETTING THE PLAINTIFF
3   COME BACK -- WHAT I'M ABOUT TO SAY DOESN'T APPLY HERE BECAUSE
4   THEY DIDN'T EVEN TRY ARBITRATION, BUT I HAVE SEEN IT IN THE
5   PAST WHERE THE PLAINTIFF DID TRY ARBITRATION AND THE AAA, OR
6   WHOEVER IT WAS, DRAGGED THEIR FEET, AND IT WAS 18 MONTHS, AND
7   THEY STILL HADN'T EVEN PICKED AN ARBITRATOR, AND IT WAS JUST A
8   GIMMICK FOR PREVENTING THEM FROM EVER HAVING THEIR DAY IN
9   COURT.  MAYBE.  I DON'T KNOW.
10           ARBITRATION IS NOT WHAT IT'S CRACKED UP TO BE.  IT IS
11  A DETOUR.  AND IT'S ONLY THE BIG COMPANIES.  WHEN BIG COMPANY A
12  SUES BIG COMPANY B IN ARBITRATION, IT WORKS GREAT.  BUT WHEN
13  LITTLE PERSON A GOES UP AGAINST BIG COMPANY B IN ARBITRATION,
14  IT'S A LONG TIME BEFORE THEY EVEN GET AN ARBITRATOR.
15           HOWEVER, THIS LONG DIATRIBE OF MINE ABOUT HOW IT
16  REALLY WORKS DOESN'T APPLY HERE BECAUSE YOU DIDN'T EVEN TRY ON
17  THE PLAINTIFF'S SIDE.  SO THERE'S NO FAULT AT ALL ON THE PART
18  OF THE ARBITRATION SYSTEM OR ON THE PART OF T-MOBILE HERE WITH
19  RESPECT TO MS. ARELLANO.  SO ENOUGH SAID ON THAT.
20           THAT'S WHY I STAYED IT, TO FIND OUT, KEEP THE HAMMER
21  OVER YOUR HEAD IN CASE THERE WAS SOME STONEWALLING, YOU COULD
22  COME BACK HERE AND GET RELIEF.  BUT THERE HASN'T BEEN ANY
23  STONEWALLING.  AS FAR AS I CAN SEE, T-MOBILE HAS BEHAVED
24  PROPERLY SO FAR.
25           ALL RIGHT.  WE'RE GOING -- I'M NOT GOING TO RULE ON

1  THIS MOTION, MR. GRANT.  I'M NOT GOING TO THROW IT OUT.  I

2  HAVEN'T EVEN READ THE PAPERS ON IT YET.  SO EITHER I WILL RULE

3  ON THE PAPERS OR WE WILL COME BACK HERE ON MAY 5 AND HAVE

4  ANOTHER HEARING.

5         SORRY I CAN'T -- I THOUGHT THIS MIGHT BE THE END OF

6  THIS CASE.  WHEN I CAME OUT HERE, I DIDN'T EVEN KNOW ABOUT THIS

7  MOTION.

8         **MS. NAGALA:**  YOUR HONOR, IF I MAY?  PLAINTIFF HASN'T

9  ACTUALLY NOTICED A MOTION TO FILE AN AMENDED COMPLAINT.  THEY

10 ONLY FILED THE MOTION ITSELF.  THERE'S NOTHING CALENDARED FOR

11 MAY 5TH.

12        **THE COURT:**  I JUST HEARD MAY 5TH.  WHERE DID THAT

13 COME FROM?

14        **MS. NAGALA:**  THERE'S A NOTICE OF MOTION TO LIFT THE

15 STAY, BUT NO SEPARATE NOTICE OF MOTION HAS BEEN FILED FOR THEIR

16 MOTION TO FILE SECOND AMENDED COMPLAINT.

17        **THE COURT:**  IS THERE A MOTION ON FILE TO FILE A

18 SECOND AMENDED COMPLAINT COMPLETE WITH ALL OF YOUR THINGS ABOUT

19 HOW SHE OPTED OUT AND ALL THAT, OR IS THAT SOMETHING -- HOW

20 LONG IS THIS MOTION?

21        **MR. COREA:**  YOUR HONOR, THE MOTION ITSELF IS A BRIEF

22 MOTION OF ABOUT TWO TO THREE PAGES, WITH THE ATTACHMENT OF THE

23 PROPOSED AMENDED COMPLAINT THAT I BELIEVE IS ANOTHER 130 PAGES

24 THAT CONTAINS A RATHER DETAILED HISTORY OF -- INCLUDING THOSE

25 ISSUES.

1        **THE COURT:** WELL, IF IT'S NOT ACCOMPANIED BY A SWORN
2   DECLARATION EXPLAINING THE DELAY, I CAN TELL YOU NOW, I'M GOING
3   TO DENY THAT MOTION.
4        **MR. COREA:** VERY WELL, YOUR HONOR.
5        **THE COURT:** I WILL DO THIS:  I WILL GIVE YOU UNTIL
6   MONDAY AT NOON, THAT'S NOT LONG, BUT TODAY IS THURSDAY.  I'LL
7   GIVE YOU UNTIL MONDAY AT NOON TO FILE THE STRONGEST MOTION YOU
8   CAN, JUSTIFYING ALL OF THE DELAY AND LAYING OUT THE FACTS AND
9   EXPLAINING WHY IT WOULD BE BETTER TO DO THIS THAN TO FILE A
10  FRESH MOTION, I MEAN FRESH LAWSUIT, AND YOU NOTICE IT ON THE
11  PROPER 35-DAY TRACK.
12       BUT I CAN TELL YOU NOW A THREE-PAGE MOTION WITHOUT
13  SWORN MATERIAL EXPLAINING YOUR DELAY IS NOT GOING TO GET
14  ANYWHERE, SO I PROBABLY WOULD DENY THAT ONE.  SO I'LL GIVE YOU
15  UNTIL MONDAY TO FILE A PROPER MOTION.
16       YOU OUGHT TO ALSO JUST CONSIDER IF YOU'RE TRYING TO
17  SAVE SOME STATUTE OF LIMITATIONS, THAT'S ALL THIS IS ABOUT, YOU
18  OUGHT TO CONSIDER JUST A FRESH LAWSUIT SO YOU DON'T HAVE ALL
19  THIS EXPENSE UP FRONT.  I'M NOT RULING THAT.  I'M JUST SAYING
20  PROBABLY THAT'S ALL THAT'S AT STAKE HERE IS SAVING PART OF THE
21  STATUTE OF LIMITATIONS.
22       OKAY.  THAT'S THE BEST I CAN DO FOR YOU RIGHT NOW.
23       **MR. COREA:** THANK YOU FOR THE COURT'S TIME, YOUR
24  HONOR.
25       **MR. GRANT:** THANK YOU, YOUR HONOR.

```
 1            THE COURT:  ALL RIGHT.  MAYBE SEE YOU IN MAY.
 2            (PROCEEDINGS ADJOURNED.)
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

*JOAN MARIE COLUMBINI, CSR, RPR*
*OFFICIAL COURT REPORTER, U.S. DISTRICT COURT*
*415-255-6842*

**CERTIFICATE OF REPORTER**

  I, JOAN MARIE COLUMBINI, OFFICIAL REPORTER FOR THE UNITED STATES COURT, NORTHERN DISTRICT OF CALIFORNIA, HEREBY CERTIFY THAT THE FOREGOING PROCEEDINGS IN C 10-5336 WHA, ARELLANO V. T-MOBILE, ET AL., WERE REPORTED BY ME, A CERTIFIED SHORTHAND REPORTER, AND WERE THEREAFTER TRANSCRIBED UNDER MY DIRECTION INTO TYPEWRITING; THAT THE FOREGOING IS A FULL, COMPLETE AND TRUE RECORD OF SAID PROCEEDINGS AS BOUND BY ME AT THE TIME OF FILING.

  THE VALIDITY OF THE REPORTER'S CERTIFICATION OF SAID TRANSCRIPT MAY BE VOID UPON DISASSEMBLY AND/OR REMOVAL FROM THE COURT FILE.

_____

JOAN MARIE COLUMBINI, CSR 5435, RPR

WEDNESDAY, APRIL 4, 2012